**UNITED STATES of America,
Plaintiff,**

v.

**Witso H. RASMUSSEN, Defendant.
Civ. No. 2323.**

United States District Court
D. Montana,
Great Falls Division.
Oct. 7, 1963.

---

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., for the District of Montana, for plaintiff.

Frisbee & Moore, Cut Bank, Mont., for defendant.

JAMESON, District Judge.

Plaintiff seeks to enjoin defendant from "acting as County Office Manager of the Glacier County A.S.C.S. Office in Cut Bank, Montana or in any way acting as a lawful employee" of that office.

Defendant, by appointment of the Glacier County Agricultural Stabilization Conservation Committee [1] served as county manager from April, 1957, until July 6, 1962. On that date the chairman of the Montana A.S.C.S. Committee sent defendant a letter notifying him that the state committee "pursuant to the authority contained in section 7.29(a)" of the applicable regulations [2] had suspended de-

---

1. The appointment was made pursuant to 7 CFR § 7.20, which reads:
"The county committee, subject to the general direction and supervision of the State committee, * * * shall be generally responsible for carrying out in the county the agricultural conservation program, * * *. In so doing the committee shall:

\*     \*     \*     \*     \*

"(b) Employ the county office manager subject to standards and qualifications furnished by the State committee to serve at the pleasure of the county committee, * * *."

2. 7 CFR § 7.29 provides in part as follows:
"(a) Any county office manager who fails to perform the duties of his employ-

fendant from the position of county manager, effective at the close of business on July 6, 1962, charging the defendant with "committing, or attempting to commit, fraud" in the conduct of his employment.[3] On July 11, 1962, defendant, by letter addressed to the state committee, refused to accept the suspension, contending that the state committee had exceeded its jurisdiction. On the same date the chairman of the Glacier County A.S.C.S. Committee notified the state committee by letter that the county committee had been furnished with no facts which would substantiate the charge of fraud; that a meeting of the county committee had been held on July 11 and the committee had determined that defendant was not guilty of the alleged fraud; that the county committee refused to accept the suspension of the defendant, and that he had been reinstated as county office manager.

At a formal meeting on July 18, the state committee voted to "confirm their action taken individually, by telephone, July 6" authorizing the chairman of the state committee to notify defendant that he was suspended as of the close of business July 6, 1962. On July 20 the state committee adopted a motion removing defendant from office as county manager.

On July 18, 1962, at the time of filing the complaint in this action, the court granted plaintiff's application for a temporary restraining order. On August 2, 1962, defendant filed an answer and counterclaim, alleging illegality of the July 6 suspension by reason of lack of jurisdiction in the state committee. A hearing was held on August 21 on plaintiff's application for a preliminary injunction. By order entered September 21, 1962, the preliminary injunction was granted. In a memorandum opinion it was held that (1) by reason of failure to comply with applicable regulations, the suspension order of July 6 was invalid and (2) the purported suspension order could not be ratified as of that date; but (3) on both July 18 and 20, the state committee, by reason of the action taken by the county committee on July 11, had authority to suspend defendant; and (4) the action taken on July 18 and 20 in effect constituted suspension orders as of those dates.

On November 8, 1962, the state committee again notified defendant of his

---

ment, or who commits, or attempts or conspires to commit, fraud in the conduct of his employment * * * shall be suspended by the county committee or if the county committee fails to act promptly in any such case, the State committee shall suspend the person involved. The person suspended shall be given a written statement of the reasons for such action and shall have 15 days from the date of mailing in which to advise in writing, in person, or both, why he should be restored to duty. The State or county committee which made the suspension, following such further investigation and review as it deems necessary or as required by applicable instructions, shall either restore to duty or remove the suspended person * * *."

3. The basis for the suspension is set forth in the notice as follows: "You are hereby charged with committing, or attempting to commit, fraud in the conduct of your employment. Following are specific details of this charge available to us at this time:

"1. On January 31, 1959, you placed your whole farm in the conservation reserve program representing that said farm contained 1,020 acres of cropland, when you knew or reasonably should have known that said farm contained approximately 980 acres of cropland. This misrepresentation has or would result in approximately a $2,000 overpayment to you.

"2. During 1959 you carried out a seeding practice on your farm, again misrepresenting that said farm contained 1,020 acres, and thus claiming payment for seeding more acres than was accomplished. Subsequently, you claimed and were paid for fertilizer which did not meet minimum requirements, thereby accepting payment in the amount of $1,190 to which you were not entitled.

"3. During 1957 and 1958 you prepared and submitted time and attendance records of your own employment as county office manager, which records certified you to be on duty during all of the periods covered, when in fact you were engaged in part-time employment as a gauger for the Toronto Pipe Line Company in the Cut Bank Oil Field."

removal from office and that he had 30 days within which to appeal to the committee for a review of the facts.[4]  On December 20, 1962, a hearing was held on defendant's appeal.  The defendant was present and represented by counsel.

On December 27, 1962, the state committee notified defendant that it sustained its action of November 8, 1962 removing defendant from office.  Defendant was advised of his right to appeal to the Deputy Administrator, State and County Operations, Agricultural Stabilization and Conservation Service, U. S. Department of Agriculture, Washington, D. C.  This appeal was properly prosecuted and on February 7, 1963, defendant was notified that, after a complete review of the case, the removal decision of the state committee was sustained.

A hearing on plaintiff's application for a permanent injunction was held on April 18, 1963.  In granting the preliminary injunction the court relied upon minutes of the meeting of the county committee held July 11, 1962, which recited that defendant's "notice of suspension from the Montana State A.S.C.A. office was reviewed, the evidence supporting their suspension and the regulations governing the same were reviewed", and " * * * on review of the charges, documents and evidence which was to support the charges, the county committee determined that the county office manager was falsely accused".  The chairman of the county committee testified at the hearing on April 18, 1963, and explained that the state committee had not at any time furnished the county committee with the evidence and facts upon which the state committee based the charges of fraud and its orders of suspension, and that the county committee had merely reviewed such evidence as it had available in the files of the county office.

4.  7 CFR § 7.30 provides as follows:
   "Any person removed from office or employment or disqualified for future office or employment under the provisions of * * * § 7.29 shall have the right of appeal to the State committee for review of the facts, and if dissatisfied with the

A transcript of the proceedings at the hearing on appeal before the state committee on December 20, 1962, was received in evidence, in which the following appears:

"Mr. McKenna (State Chairman): Present your facts.

"Mr. Frisbee (Counsel for defendant): At this time, does the Government intend to present any witnesses?

"Mr. Mostow (Counsel for Department of Agriculture): May I make a statement, Mr. Chairman?

"Mr. McKenna: Proceed.

"Mr. Mostow: As you know, the State Committee has had before it facts on which it based its charges against Mr. Rasmussen.  These facts are part of the record.  This is the opportunity afforded to the Appellant to offer what he chooses to disprove these charges, to explain them, and to offer any legal argument he cares to make or to take any action he wishes to ask the Committee to review the facts which it had before him.  Now, it had a set of facts from which it acted and *we have given you a brief summary of those facts*.  Now, this is not a judicial proceeding.  *The Committee has its evidence*.  Now it is your opportunity to present yours.

"Mr. Frisbee: Mr. Mostow. I would like to correct your statement.  As far as my knowledge is concerned, there have absolutely been no facts presented to the Committee upon which they have acted.  Mr. Rasmussen

decision of the State committee, to the Deputy Administrator in accordance with such procedure as he may prescribe.  Notice of such appeals must be filed within 30 days of the date the notice of removal, disqualification, or decision is mailed to any such person."

has repeatedly requested the facts or the evidence upon which this suspension has been based, and those facts and evidence have been denied both to Mr. Rasmussen and to the Glacier County A.S.C. Committee. As of November 6th, the first opportunity that Mr. Rasmussen had or that his counsel had or that the Glacier County A.S.C. Committee had to review what might be referred to as facts were when Mr. Rasmussen was furnished with a copy of a statement which he purportedly signed, which was dictated by Mr. Kennedy, of your San Francisco office. To our knowledge, the only basis for the suspension and the only facts in evidence upon which his suspension has been made is based upon this statement. Now, am I correct in my understanding that the statement of Mr. Rasmussen which was signed by him is the only basis for his suspension?

"Mr. Mostow: I think not. *There are additional facts.* The facts are a summary of which have been read. *Now we have not stated to you at any time that we are going to furnish you the evidence upon which these charges were based. This is within the knowledge and custody of the State Committee.*

"Mr. Frisbee: At this time, may the record show that counsel for the Appellant and the Appellant objects to a proceeding such as this. This is the first time in my extensive practice of the law that I have ever run into a situation wherein the United States of America concealed and withheld evidence upon which a person is accused of fraud so that he may not know the evidence or the facts which he is to refute. * * *

* * * * * *

"Mr. Frisbee: At this time, it is our understanding that the evidence and the facts upon which Mr. Rasmussen is being tried will not be furnished to him, is that correct?

"Mr. McKenna: Correct." (Emphasis added.) (Tr. 8, 9, 10, 11.)

It is now clear from the evidence before the court:

1. At no time was the defendant, his counsel, or the county committee furnished with any statement of the evidence upon which the state committee based its charges of fraud, and orders of suspension and removal, other than (a) the statement of charges set forth in footnote 3, and (b) defendant's own statement to an investigator for the Department of Agriculture;

2. The county committee and the defendant, both personally and through counsel, repeatedly requested a statement of the evidence upon which the charge of fraud was based;

3. Defendant was given an opportunity to offer any evidence he might have to disprove or explain the charges against him; but

4. At no time was he given the right to confront and cross-examine the witnesses upon which the state committee relied in support of its charge of fraud and its orders of suspension and removal.

The primary question before the court is whether by reason of plaintiff's failure to furnish defendant with a statement of the evidence against him and grant him the right of confrontation and cross-examination there was a failure to comply with applicable regulations and a denial of due process.

The answer to this question requires a careful analysis of the decisions of the Supreme Court involving the dismissal of employees of the Executive branch of the Government.

In Keim v. United States, 1900, 177 U.S. 290, 293–294, 20 S.Ct. 574, 575–576, 44 L.Ed. 774, 776, involving the dismissal of an honorably discharged veteran on a charge of inefficiency, the Court said:

"The appointment to an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment. The appointing power must determine the fitness of the applicant; whether or not he is the proper one to discharge the duties of the position. Therefore it is one of those acts over which the courts have no general supervising power.

"In the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment. 'It cannot for a moment be admitted that it was the intention of the Constitution that those offices which are denominated inferior offices should be held during life. And if removable at pleasure, by whom is such removal to be made? In the absence of a constitutional provision or statutory regulation it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment.' * * * Unless, therefore, there be some specific provision to the contrary, the action of the Secretary of the Interior in removing petitioner from office on account of inefficiency is beyond review in the courts either by mandamus to reinstate him or by compelling payment of salary as though he had not been removed."

In Eberlein v. United States, 1921, 257 U.S. 82, 42 S.Ct. 12, 66 L.Ed. 140, plaintiff had been removed from his position of storekeeper in the Customs Service at the port of New York on a charge that he had accepted certain bribes. His removal was made subsequent to a hearing on the charges. He was later cleared of the charges and reinstated, whereupon he sued for wages alleged due to him for the interval between removal and reinstatement. In denying recovery the Court said in part:

"There can be no question from the findings in this case that the plaintiff had the benefit of a hearing according to the regulations then in force. The Court of Claims in its opinion stated that the subsequent investigation established his innocence of the charges made against him. But the things required by law and regulations, were done, and the discretion of the authorized officers was exercised as required by law. It is settled that in such cases the action of executive officers is not subject to revision in the courts. Keim v. United States, 177 U.S. 290 [20 S.Ct. 574, 44 L.Ed. 774]." (257 U.S. at 84, 42 S.Ct. at 12, 66 L.Ed. 140.)

In 1951 the Court decided Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817. The Attorney General had designated the complaining organizations as Communist and had included them in a list of organizations furnished by him to the Loyalty Review Board of the United States Civil Service Commission. The Attorney General claimed authority for this action under an executive order which provided in part that the Department of Justice should furnish the Loyalty Review Board with the names of organizations, etc. "which the Attorney General, after appropriate investigation and determination, designates as totalitarian, fascist, communist or subversive * * *". The organizations alleged that they were engaged in charitable or civil activities or in the business of fraternal insurance.

In reversing a judgment of dismissal, each of the five justices who agreed that the case should be reversed wrote a separate opinion. The opinion of the Court by Mr. Justice Burton, in which Mr. Justice Douglas concurred, read in part: "The designation of these organizations was not preceded by any administrative hearing. The organizations received no notice that they were to be listed, had no opportunity to present evidence on their own behalf and were not informed

of the evidence on which the designations rest. \* \* \*" (341 U.S. at 138, 71 S.Ct. at 631, 95 L.Ed. 817.) Mr. Justice Jackson, in his concurring opinion, emphasized the fact that a government employee might be discharged and disqualified from employment without any opportunity to be heard.[5]

In explaining the meaning of "due process" Mr. Justice Frankfurter, in his concurring opinion, said in part:

" '(D)ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances \* \*. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess." (341 U.S. 162–163, 71 S.Ct. 643–644, 95 L.Ed. 817.)

"(T)he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." (341 U.S. 168, 71 S.Ct. 646–647, 95 L.Ed. 817.)

In Greene v. McElroy, 1959, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, the Government had revoked the security clearance of petitioner, the manager of a private corporation engaged in developing and producing goods involving military secrets for the Armed Forces. As a consequence of the revocation of his security clearance, petitioner was discharged from his job. The Court, speaking through Mr. Chief Justice Warren, said in part:

"The Government presented no witnesses. It was obvious, however, from the questions posed to petitioner and to his witnesses, that the Board relied on confidential reports which were never made available to petitioner. These reports apparently were compilations of statements taken from various persons contacted by an investigatory agency. Petitioner had no opportunity to confront and question persons whose statements reflected adversely on him or to confront the government investigators who took their statements." (360 U.S. at 479, 79 S.Ct. at 1404–1405, 3 L.Ed.2d 1377.)

\* \* \* \* \* \*

"The issue, as we see it, is whether the Department of Defense has been authorized to create an industrial security clearance program under which affected persons may lose their jobs and may be restrained in following their chosen professions on the basis of fact determinations concerning their fitness for clearance made in proceedings in which they

---

5. Mr. Justice Jackson said in part:
   "If the only effect of the Loyalty Order was that suffered by the organizations, I should think their right to relief very dubious.
   "But the real target of all this procedure is the government employee who is a member of, or sympathetic to, one or more accused organizations. He not only may be discharged, but disqualified from employment, upon no other ground than such membership or sympathetic affiliation. And he cannot attack the correctness of the Attorney General's designation in any loyalty proceeding.
   "Ordinary dismissals from government service which violate no fixed tenure concern only the Executive branch, and courts will not review such discretionary action. However, these are not discretionary discharges but discharges pursuant to an order having force of law. Administrative machinery is publicly set up to comb the whole government service to discharge persons or to declare them ineligible for employment upon an incontestable finding, made without hearing, that some organization is subversive. To be deprived not only of present government employment but of future opportunity for it certainly is no small injury when government employment so dominates the field of opportunity.
   "The fact that one may not have a legal right to get or keep a government post does not mean that he can be adjudged ineligible illegally." (341 U.S. at 184, 185, 71 S.Ct. at 655, 95 L.Ed. 817.)

are denied the traditional procedural safeguards of confrontation and cross-examination." (360 U.S. at 493, 79 S.Ct. at 1404–1405, 3 L.Ed.2d 1377.)

\* \* \* \* \* \*

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots." (360 U.S. at 496, 79 S.Ct. at 1413, 3 L.Ed.2d 1377.)

The Court went on to hold that there had been no express authorization by either Congress or the President which would sustain this arbitrary action. In the absence of such authorization, the deprivation of employment without procedural safeguards was not proper.

In Hannah v. Larche, 1960, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307, the Court had under consideration rules of procedure of the Commission on Civil Rights which failed to provide for apprisal of the accused persons of the charges against them, confrontation of accusers, etc. The Court held that because the function of the Commission was purely investigative, and not adjudicative, the due process clause would not require these procedures. In making this distinction, the Court said:

"Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. \* \* \* " (363 U.S. at 442, 80 S.Ct. at 1514–1515, 4 L.Ed.2d 1307.

Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230, involved a petitioner who worked as a cook for a private concessionaire in a cafeteria on the premises of a Naval Gun Factory. The petitioner's security clearance was revoked, causing her suspension from work. A request for a hearing was denied. The Court held that the superintendent of the factory had authority to exclude her from the military premises. Further, there was no violation of the Due Process Clause of the Fifth Amendment, for as the Court said: "In that proprietary military capacity, the Federal Government, as has been pointed out, has traditionally exercised unfettered control." (367 U.S. 896, 81 S.Ct. 1749, 6 L.Ed.2d 1230.) **6**

---

**6.** The Court said further: "All this record shows is that, in the opinion of the Security Officer of the Gun Factory, concurred in by the Superintendent, Rachel Brawner failed to meet the particular security requirements of that specific military installation. There is nothing to indicate that this determination would in any way impair Rachel Brawner's employment opportunities anywhere else.

As pointed out by Judge Prettyman, speaking for the Court of Appeals, 'Nobody has said that Brawner is disloyal or is suspected of the slightest shadow of intentional wrongdoing. "Security requirements" at such an installation, like such requirements under many other circumstances, cover many matters other than loyalty.' [Cafeteria and Restaurant Workers Union, Local 473, A.F.L.–C.I.O.

In Vitarelli v. Seaton, 1959, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012, petitioner was an employee of the Department of the Interior in a nonsensitive position. Purporting to proceed under departmental regulations prescribing procedure for suspension and removal in security risk cases, the Secretary suspended petitioner. At a hearing before a board, no evidence was adduced in support of the charges made against petitioner, and no witnesses testified against him. The Court held that the removal was illegal, saying:

"It is true that the Act of August 26, 1950, and the Executive Order did not alter the power of the Secretary to discharge summarily an employee in petitioner's status, without the giving of any reason. Nor did the Department's own regulations preclude such a course. Since, however, the Secretary gratuitously decided to give a reason, and that reason was national security, he was obligated to conform to the procedural standards he had formulated * * * for the dismissal of employees on security grounds. * * * Having chosen to proceed against petitioner on security grounds, the Secretary * * was bound by the regulations which he himself had promulgated for dealing with such cases, even though without such regulations he could have discharged petitioner summarily." (359 U.S. 539, 540, 79 S.Ct. 972–973, 3 L.Ed.2d 1012.)

The Court, in footnote 2 on page 540 of 359 U.S., on page 973 of 79 S.Ct., 3 L.Ed.2d 1012, indicated that its holding was placed purely on a procedural violation of the applicable regulations, saying, "As already noted, we do not reach the question of the constitutional permissibility of an administrative adjudication

based on 'confidential information' not disclosed to the employee." Mr. Justice Frankfurter, with whom Mr. Justice Clark, Mr. Justice Whittaker and Mr. Justice Stewart joined, concurred in part and dissented in part. Concurring with the Court's requirement of compliance with regulations, he said:

"(I)f dismissal from employment is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed. * * * This judicially evolved rule of administrative law is now firmly established and, if I may add, rightly so. He that takes the procedural sword shall perish with that sword." (359 U.S. at 546–547, 79 S.Ct. at 976–977, 3 L.Ed.2d 1012.)

█ The cases hold uniformly that where a hearing on the facts is required in adjudicating rights, each party has a right "to be apprised of all the evidence upon which a factual adjudication rests, plus the right to examine, explain or rebut all such evidence". Carter v. Kubler, 1943, 320 U.S. 243, 247, 64 S.Ct. 1, 3–4, 88 L.Ed. 26.[7]

In National Labor Relations Board v. Prettyman, 6 Cir., 1941, 117 F.2d 786, 790, in discussing due process in N.L.R.B. proceedings, the court said:

"No particular form of procedure is required to constitute due process in administrative hearings. Its requirement must be measured in the light and purpose of such hearings. * * *

"An employer is entitled to a hearing of and decision on the charges against him according to the fundamental principles that inhere in due process of law, and *indispensable requisites of such hearings are* that the

---

v. McElroy], 109 U.S.App.D.C. [39], at 49, 284 F.2d [173], at 183. For all that appears, the Security Officer and the Superintendent may have simply thought that Rachel Brawner was garrulous, or careless with her identification badge." (367 U.S. 898, 899, 81 S.Ct. 1750–1751, 6 L.Ed.2d 1230). This conclusion was questioned in a dissenting opinion by Mr.

Justice Brennen, in which he was joined by the Chief Justice, Mr. Justice Black and Mr. Justice Douglas.

**7.** See also Jordan v. American Eagle Fire Ins. Co., 1948, 83 U.S.App.D.C. 192, 169 F.2d 281, 288; Ohio Bell Telephone Co. v. Public Utilities Commission, 1937, 301 U.S. 292, 302–303, 57 S.Ct. 724, 81 L.Ed. 1093.

course of proceedings shall be appropriate to the case and just to the employer; that he shall be notified of the charges against him in time to meet them and shall have an opportunity to be heard and cross-examine the witnesses against him and shall have time and opportunity at a convenient place, *after the evidence against him is produced and known to him,* to produce evidence and witnesses to refute the charges, and that the decision of the Board shall be governed by and based upon the evidence produced at the hearing." (Emphasis added.)

We come now to the application of the foregoing principles to the facts in this case. This is not a case where defendant was discharged without his employer giving any cause therefor, or where the discharge was for inefficiency or insubordination. Defendant was suspended and removed on an express charge of fraud in the conduct of his office. By reason of the alleged fraud plaintiff seeks to enjoin him from holding any office or employment with the Glacier County A.S.C.S. office. The applicable regulations provide that any person so "removed from office or employment or disqualified for future office or employment * * * shall have the right of appeal to the state committee for review of the facts * * *".[8]

■ There is no provision in the regulations for either hearing or review prior to suspension and removal from office. This does not necessarily involve a denial of procedural due process. Administrative procedures need not conform to all of the procedural niceties that surround the judicial process. This was recognized in Parker v. Lester, 9 Cir., 1955, 227 F.2d 708, 716, where the court said:

"The demands of due process do not require a hearing at the initial stage or at more than one point in an ad-

ministrative proceeding so long as the requisite hearing is held before the final order becomes effective. Opp Cotton Mills v. Administrator, 312 U.S. 126, 152, 61 S.Ct. 524, 85 L.Ed. 624. But the constitutional right to a hearing has always been understood to include at some stage of the proceeding at least that which was defined in Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 999, (sic) 82 L.Ed. 1129, as follows: 'The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command.' "

Admittedly, there was no hearing prior to the suspension and removal orders. Defendant was granted a hearing on his appeal for "review of the facts". He was present at that hearing and represented by counsel. However, neither at that hearing nor at any prior time were the defendant and his counsel apprised of the evidence against the defendant, aside from a statement of charges and a copy of defendant's own statement taken by an investigator of the Department of Agriculture.[9] Admittedly, other facts and evidence were considered by the committee. Can there be an effective review of the facts when the accused is denied access to the facts which the state committee relied upon in removing him from office? As was well said in Parker v.

8. It is not necessary to determine whether the state committee would have had the right to suspend and remove defendant on a charge of fraud without a hearing and without an appeal in the absence of any regulations. Here, regulations were

promulgated to control the procedure, and the regulations must be "scrupulously observed". Vitarelli v. Seaton, supra. (Concurring opinion.)

9. Had a full hearing, replete with the requirements of due process, been granted

Lester, supra, the right of hearing and review would be a barren one if the accused is not given "a reasonable opportunity to know the claims of the opposing party and to meet them". This includes confrontation and cross-examination. Greene v. McElroy, supra.[10]

■ I conclude that, by reason of the refusal of the state committee at the hearing on December 20, 1962, to apprise defendant of the evidence against him and grant him the rights of confrontation and cross-examination, there was a failure to meet the requirements of the regulations and a denial of due process in the conduct of the hearing. The motion for a permanent injunction accordingly must be denied.

Having reached this conclusion, it is unnecessary to consider the other contentions of the parties. In fairness to both parties, however, I should comment on defendant's contention that the state committee lacked jurisdiction to enter either of the suspension orders. Defendant contends that these orders were void on two grounds: (1) by reason of the failure of the state committee to furnish the county committee with any facts or evidence to sustain the charges of fraud, there was no basis for action by the county committee; and (2) even if the facts had been furnished, under the express wording of section 7.29(a) the state committee had no power to suspend because the county committee had acted and decided there was no basis for suspension.[11]

The first contention was considered by this court in ruling on the motion for a preliminary injunction. It was held that the suspension order of July 6, 1962, was invalid for failure to comply with applicable regulations. With particular reference to the failure of the state committee to furnish the county committee with its evidence in support of the charge of fraud, it was said: "In all fairness and under any reasonable construction of the regulation, the county committee should have been apprised fully in writing with respect to the alleged acts of fraud and given a reasonable opportunity to take action before any action was taken by the state committee". The opinion continued in part:

"Had no further action been taken by either the county or state committee, I would deny plaintiff's application for a preliminary injunction. On July 11, 1962, however, the county committee met formally, considered fully the charges against defendant, and reviewed them with community committeemen present at the meeting. 'The charges against (defendant) were judged to be false and without warrant.' The committee voted to retain defendant as office manager."

It now appears that at its July 11, 1962, meeting the committee did not have or consider the evidence in the possession of the state committee, but only such evidence as was available in the county office. The charges were reviewed with the community committeemen present at the meeting. In any event, the county committee did in fact act and, according

at an earlier stage of the administrative procedure, it might not have been necessary at the time of the appeal. This question is not before the court, for the facts show that no hearing had been previously granted.

10. The case of Studemeyer v. Macy, D.C. Cir., 321 F.2d 386, 1963, cited by plaintiff (on another point of due process) is distinguishable. In that case a government employee was discharged for insubordination. He was accorded all rights required by applicable regulations. The court expressly called attention to the fact that it was "concerned with due

process as it pertains to the discharge of a government employee for a cause which has no such impact upon his reputation as was dealt with, for example, in Greene v. McElroy", supra.

11. Plaintiff argues that this is a "unique" and "illogical" position. The county committee, however, was placed in this position by the failure of the state committee to furnish evidence in its possession to the county committee, and this evidence was considered by the state committee when it subsequently voted to suspend the defendant.

to its minutes, did "review the charges, documents and evidence which was to support the charges" and "determined that the county office manager was falsely accused". Accordingly, we have this situation: on the basis of charges made by the state committee, the county committee met with the defendant and the community committeemen, reviewed the charges and the evidence in the files of the county committee (but without the benefit of the evidence in the hands of the state committee), and concluded that the defendant was not guilty of the alleged fraud and refused to suspend. Subsequently, on the basis of evidence in its possession, including the evidence which had not been furnished to the county committee, the state committee concluded that the defendant was guilty of the alleged fraud and made its orders of suspension and removal.

When the state committee requested the county committee to suspend the defendant, the county committee was faced with this dilemma: It could either refuse to act until it received the evidence upon which the state committee relied in support of its charges, or it could act on the basis of the charges and available evidence and either suspend or refuse to suspend. It chose the latter course. Defendant still relies, however, upon his first contention that there was no basis for any action by the county committee because of the failure of the state committee to furnish the evidence, and that consequently the state committee had no authority to suspend.

It is defendant's second contention that, even if the facts upon which the state committee acted had been furnished to the county committee, the state committee had no authority to suspend or remove defendant. Defendant argues that this result is required by the express provision of regulation 7.29(a), which reads in pertinent part: "(a) Any county office manager who * * * commits, or attempts, or conspires to commit, fraud in the conduct of his employment * * * shall be *suspended* by the *county committee* or if the county committee fails to *act* promptly in any such case, the State committee shall suspend the person involved." (Emphasis supplied.)

Defendant argues that there may be three results where the county committee has information upon which to act: (1) it may refuse to act; (2) it may decide there is a basis for suspension and suspend the employee; or (3) it may find there is no basis for a suspension and decide not to suspend. It is defendant's position that if the county committee follows the first course and refuses to act altogether, the state committee may take action; if the county committee follows the second course and decides to suspend, the employee has a right of appeal; but if the county committee follows the third course and decides not to suspend, its decision is final and the state committee has no right to override its decision.[12] Counsel suggest that if it had been intended to give a "veto power" to the state committee when the county committee decided not to suspend, the word "suspend" rather than "act" should have been used in the portion of section 7.29(a) quoted above.

Plaintiff argues that the use of the word "shall" in section 7.29 makes it mandatory to suspend a manager who commits or attempts or conspires to commit fraud in the conduct of his employment; that while the county committee has the initial authority to suspend a manager charged with fraud, if the county committee fails to act promptly, including refusal to act, the mandate provided by the regulation itself passes on

12. In effect it is argued that, analogous to criminal proceedings, a right of appeal is given to the accused, but the state committee has no authority to review rulings favorable to the accused. See Peters v. Hobby, 1955, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129, where it was held that the Loyalty Review Board of the Civil Service Commission had no right to review rulings favorable to employees or adjudicate cases on its own motion. The decision was based on the fact that under the Executive Order creating the Board the jurisdiction of the Board extended only to appeals from rulings adverse to the employee.

to the state committee; and in the event the state committee fails or refuses to act, the ultimate and final authority of the Secretary of Agriculture would have to be exercised to carry out the mandate contained in his own regulation.

Certainly the regulation is not a model of clarity and defendant makes a plausible argument in support of his position. A strict reading of section 7.29(a) standing alone might well support defendant's contentions. The act and regulations, however, must be viewed as a whole.

The "hierarchy of command" in the Department of Agriculture's administration of the Agricultural Stabilization and Conservation program was considered in Duba v. Schuetzle, 8 Cir., 1962, 303 F.2d 570. In that case there was a dispute between the state and county committees over the relocation by the state committee of a county A.S.C. office. The district court held that it was for the county committee to decide whether or not the office should be relocated and its decision on that point would be final; that the state committee, acting in its supervisory capacity, could approve or disapprove the decision of the county committee, but could do no more. The court of appeals held that the district court was without jurisdiction of the controversy. While its opinion did not refer specifically to the district court's construction of the regulation, in discussing the Act and regulations the court said in part:

"The Secretary of Agriculture has promulgated regulations which, in effect, establish a 'hierarchy of command,' with general supervision being delegated to a Deputy Administrator who acts for the Secretary of Agriculture in the daily administration of the various agricultural programs. Section 7.20 of the Regulations, 7 C.F.R. § 7.20, specifically provides that the County Committee, 'subject to the general direction and supervision of the State committee,

* * * shall be generally responsible for carrying out in the county the agricultural conservation program * * *' (Emphasis supplied)."

█ While the question is not free from doubt, it is my conclusion that viewing the act as a whole, including the general supervisory powers granted to the state committee, the state committee has the power to suspend a county manager when the county committee either fails to act at all or fails to suspend, if the state committee has evidence which in its opinion requires suspension.

This conclusion regarding defendant's second contention should not be construed as approving the failure of the state committee to furnish to the county committee the evidence against the defendant in support of the charge of fraud.[13] Had it done so, protracted and expensive litigation for both parties might have been avoided.

The plaintiff's motion for a permanent injunction is denied. Counsel will be given an opportunity to present their views with respect to further proceedings in the light of this opinion.

---

13. It is unnecessary to determine what the effect would have been had the county committee not taken any action at all by reason of the failure of the state committee to furnish this evidence and simply advised the state committee that it would act promptly as soon as the evidence was furnished.