Francis D. KELLY, Plaintiff,

v.

J. Viola HERAK, James Wood, Jr., and Lloyd Barnard, in their official capacity as the members of the Montana Agricultural Stabilization and Conservation State Committee, and the United States Department of Agriculture, Defendants.

Civ. No. 2573.

United States District Court
D. Montana,
Havre-Glasgow Division.

March 29, 1966.

Habedank, Cumming & Best, Sidney, Mont., for plaintiff.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendants.

JAMESON, Chief Judge.

Plaintiff was office manager of the McCone County ASCS Office until his suspension on November 19, 1964, by the Montana State ASCS Committee, the defendants Herak, Wood and Barnard. Appeals to the State Committee and the Deputy Administrator, Agriculture Stabilization and Conservation Service, Washington, D. C., were denied. Thereupon plaintiff instituted this action for reinstatement and back pay. Both sides have moved for summary judgment.

Plaintiff was suspended by letter notice from the State Committee dated November 19, 1964, the notice reciting that the committee at its meeting on that date "fully considered information and rec-

ords available to it involving (plaintiff's) activities as office manager", and that plaintiff was suspended "for failure to perform the duties of (his) employment and for impeding the effectiveness of farm program administered" in McCone County.[1] Plaintiff was specifically charged with giving "advice and information to farmers concerning the execution of conservation and reserve contracts contrary to regulations and procedures." [2]

On November 27, 1964, plaintiff wrote the State Committee denying that he had knowingly or willfully given advice or information contrary to regulations and requesting reinstatement, or in lieu thereof, a "public hearing" and copies of the original or photocopies of the contracts upon which the committee relied. On December 29, 1964, plaintiff was advised by the State Committee that it would consider his "appeal at a closed hearing" in Bozeman, Montana, on January 12, 1965, that he would be given an opportunity to present oral and written testimony in support of his appeal, and that the "hearing is informal in nature."

Plaintiff, with his attorney, Otto T. Habedank, appeared at the hearing. The State Committee and Phil J. Kirwan from the Office of General Counsel, United States Department of Agriculture, were present.

At the outset plaintiff was advised by the chairman that it was "an informal hearing" to afford him an opportunity to present any and all reasons why he should be restored to duty. He was also informed that the Committee had determined that one of the contracts "was not material" to the hearing.

Mr. Kirwan stated that the Committee "assumes that Mr. Kelly is familiar * * * with the situations with respect to entering into" the contracts; that the hearing was not "a public trial"; that the "regulation does not provide for a trial and provides only for an opportunity for Mr. Kelly to present reasons why he should be restored to his duties * * * *". Mr. Habedank stated that Mr. Kelly was "not in possession of the file"; that in fairness any matter which appeared in the file should not be used as the basis of the decision "unless the specific matter can be examined and the parties involved".

It appears from the transcript of the hearing that Kelly worked intermittently for ASC as a field reporter or clerk between 1949 and 1958, except for two years in the armed forces. He was made office manager in October, 1958.

1. Action was taken pursuant to section 7.29(a) of the Regulations governing county and community committees, Title 7, Subtitle (a) Part 7, CFR, which provides in pertinent part:
   "Any County Office Manager who fails to perform the duties of his employment, or who commits or attempts or conspires to commit fraud in the conduct of his employment, or is incompetent, or who seriously impedes the effectiveness of any program administered in the County, * * * shall be suspended by either the County Committee, State Committee, or Deputy Administrator.
   "Any County Office Manager who is under formal investigation for any of the above cited reasons may be suspended by either the County Committee, State Committee, or Deputy Administrator.
   "A person suspended under the provisions of this paragraph shall be given a written statement of the reasons for such action and fifteen days from the date of mailing in which to advise the Committee or Deputy Administrator, whoever made the suspension, in writing, in person, or both, why he should be restored to duty."

2. The letter continues as follows:
   "You gave advice and information to farmers concerning the execution of conservation reserve contracts contrary to regulations and procedures. As a result of your failure to follow regulations and procedures, contracts were entered into which involved ineligible land, improper division of program payments, and payments in excess of the $5,000 payment limitation. Examples of contracts in which one or more of these irregularities occurred are:" (Twelve contracts are listed).

The contracts are not shown in the transcript, and the dates of most of the transactions cannot be determined from the record. A contract with Walter and Kenneth Schillinger [3] apparently formed a pattern for the handling of the subsequent contracts. This contract was entered into during the time Kelly was conservation clerk and before he became office manager. Kelly claimed that correspondence and documents in the file (which were not included in the transcript) show that the procedure followed was approved by the State Committee. Kelly testified further that each contract had "been audited at least once" and that he did not at any time withhold any information from either the farmer or the auditors and other supervisors. He contends that any failure to comply with the regulation was not willful but the result of an honest mistake in the interpretation of the regulations, and that in most instances others had participated in the erroneous interpretation.[4]

The hearing consisted solely of a brief outline of the charges by Mr. Kirwan (see note 3) and plaintiff's explanation. No other evidence was presented. It is clear, however, that the State Committee relied upon statements obtained by its investigators; that the persons who gave the statements were not produced as witnesses as requested by the plaintiff; and that plaintiff had no opportunity to cross-examine the persons who made the statements.[5]

3. With respect to this contract, the charge was outlined by Mr. Kirwan as follows:

"Apparently Walter and Kenneth Schillinger are brothers who jointly operate a farm. Their contract calls for a total annual payment of $9,999.40, divided equally between them. The charge, if you wish to call it that, with respect to this contract is that it was permitted to be entered into by these two brothers on the basis that they were determined or it was determined to be a joint operation or a joint enterprise, rather than a partnership.

"Under the rules to which I referred, it doesn't make any difference in either case, partnership or joint venture, they are limited to one $5,000.00 payment."

4. Kelly testified in part:

"Q Is this a correct statement? If an error has occurred in the misinterpretation of these instructions as to whether joint entities could be treated separately from individuals, is that a misinterpretation which you have withheld from anyone during the years?

"A No.

"Q Would you amplify that? I think you can do it better than I can by asking questions.

"A The interpretations that we have of regulations, and especially those in connection with separate entities, was a matter of much discussion prior to entering into any contracts. State Office employees, County Committeemen and office personnel attended many educational meetings in attempts to resolve what created separate entities. It was of considerable discussion and concern at the time Soil Bank contracts were entered into.

"The interpretation I have of what constitutes a separate entity is based on the information that was given at these meetings and is given in, for example, the letter which has been submitted as an exhibit.

"I might also add that these interpretations were also acquired by members of the County Committee and the County Committee, is, of course, the body who must make the final decision on approval or disapproval. At all times they had all of the information that was available to me on which to base their decision.

"Q The Schillinger contract then was entered into and the $5,000.00 limitation was exceeded prior to the time you became Office Manager?

"A That is correct."

5. Counsel for plaintiff made repeated demands for production of the statements and the persons who made them. With reference to the use of the statements, the chairman of the committee said in part:

"MRS. HERAK: The statements that were obtained by the investigator were, of course, signed statements. They had them read them. They made a statement, they read them again then, before they were signed."

Following this remark, counsel again pointed out the dangers in relying upon such statements without an opportunity to cross-examine the persons making them, and without revealing the contents of the statements to plaintiff in order that he might have an opportunity to refute them.

By letter dated January 28, 1965, the plaintiff was removed from office effective at the close of business of that date. This letter reads in pertinent part:

"The State committee has fully considered the record of your removal, including your testimony and the documentary evidence introduced at your personal appearance before the State committee on January 12, 1965. The committee has determined that you knew, or should have known, the regulations and procedures which were properly applicable to the conservation reserve contracts which were listed in the notice of suspension given to you under date of November 19, 1964. The committee has also determined that you failed and neglected to follow such applicable regulations and procedures and that such failure and negligence resulted in conservation reserve contracts being entered into which involved ineligible land, improper division of payments, and payments in excess of the $5,000 maximum payment limitation."

Plaintiff contends that (1) he was denied due process in his suspension and removal; (2) he and his attorney were denied access to audits and investigatory reports which form the basis of his suspension and removal; (3) he was not fully informed regarding the facts and circumstances constituting the alleged irregularities; (4) he was denied a fair and impartial hearing with the right of confrontation and cross-examination; (5) he acted in good faith and upon the advice and consent of the State Executive Director and fieldman of the Montana ASC Committee in construing the regulations; (6) his actions were never questioned until plaintiff made public certain acts of the defendant committee and its employees in influencing a "yes" vote on a wheat referendum; (7) the action of the committee was arbitrary, capricious and an abuse of discretion, and (8) contrary to the written decision of a majority of McCone County committee requesting that plaintiff be reinstated.

Defendant contends that (1) this court is limited to a review of the record made by the State ASCS Committee; (2) the plaintiff "is not entitled to a review under the Administrative Procedure Act"; (3) the opinion of this court in United States v. Rasmussen, 222 F.Supp. 430, does not apply because it was based on a "different version of the regulations of the Secretary of Agriculture"; and (4) the scope of review is whether there is "a rational basis for the conclusion reached by the State ASCS Committee and whether all provisions of the applicable statutes and regulations have been followed by the State Committee".

The authorities cited by the Government support the conclusions that (1) plaintiff is not entitled to an Administrative Procedure Act review[6]; (2) that the court is limited to a review of the record and that the propriety of the agency action must be based upon the ground invoked by the agency, subject to the further rule that the "ultimate findings" must "flow rationally from the basic findings of fact, but the basic findings (must also be) supported by evidence"[7]; and (3) that this court has no jurisdiction to pass upon the merits of the case, but is limited to determining whether the "action of the agency was arbitrary or capricious", and if there "was a rational basis for its conclusion, the court will not substitute its own judgment for that of the administrative agency".[8]

It is recognized by both parties that this court may determine whether all provisions of the applicable statutes and regulations were followed by the State

---

6. 5 U.S.C. § 1004 exempts from the provisions of the Act "the selection or tenure of an officer or employee of the United States other than examiners appointed pursuant to section 1010 * * *." See also McEachern v. United States, 4 Cir. 1963, 321 F.2d 31, 33.

7. See Bond v. Vance, 1964, 117 U.S.App. D.C. 203, 327 F.2d 901, 902, and cases there cited.

8. See Daub v. United States, E.D.N.Y. 1964, 227 F.Supp. 941.

ASCS Committee. Further questions are presented, however, as to whether the applicable regulations afford due process, and whether this is a matter which the court may properly consider.

It is true, as the Government contends, that the regulations of the Secretary were changed subsequent to the decision of this court in United States v. Rasmussen. 7 C.F.R. § 7.30, in effect when Rasmussen was decided, read in pertinent part as follows:

"Any person removed from office or employment or disqualified for future office or employment under the provisions of * * * § 7.29 *shall have the right of appeal to the State committee for review of the facts,* and if dissatisfied with the decision of the State committee, to the Deputy Administrator in accordance with such procedure as he may prescribe. Notice of such appeals must be filed within 30 days of the date the notice of removal, disqualification, or decision is mailed to any such person." (Emphasis added).

The provision that the person removed from office "shall have the right of appeal to the State Committee with a review of the facts" was deleted in amendment dated October 17, 1964.

Filed with the transcript of the hearing were excerpts from a "State Administrative Handbook" and "County Administrative Handbook" issued by the Department of Agriculture. Pertinent instructions in the State Handbook, upon which the respective parties rely, include the following:

Par. 66 WHO ISSUES SUSPENSION NOTICES

B *County Committee Authority.* The county committee shall normally issue a suspension notice for a county office manager. The State committee or the Deputy Administrator, State and County Operations, may, when either deems it necessary, issue a notice to a county office manager.

Par. 67 SUSPENSION ACTIONS BY STATE COMMITTEE

A *Basis for Suspension.* The State committee *shall review all facts available pertaining to acts committed by an individual* as they relate to the definition of cause as set forth in paragraph 63. * * * (Emphasis added).

B *Notification.* The State committee shall promptly notify the suspended individual in writing of his suspension and shall advise him that he has 15 days from the date of mailing in which to advise the State committee in writing, in person, or both, why he should be restored to duty. *The notification shall set forth the reasons for the action in sufficient detail so as to enable the suspended person to be fully informed of the nature of the facts relied on for the action.* * * * (Emphasis added).

68 REMOVAL ACTION BY THE STATE COMMITTEE

&ast; &ast; &ast; &ast; &ast;

D *Other Alternatives.* It is of utmost importance that the State committee consider whether the nature of the charges and the facts are grave enough to warrant removal. Except in the most serious cases, several alternatives other than removal are available to the State committee. These alternatives may consist of indoctrination, training, improved supervision, assistance from the State office, a letter of reprimand, or any combination of these alternatives.

68.5 DISQUALIFICATION FOR FUTURE SERVICE OR EMPLOYMENT

A person removed for cause other than political activity and a person who it is determined would have been removed had he not resigned during suspension are automatically disqualified from future ASCS county service or employment. * * *

#### 68.75 BAR TO FUTURE SERVICE OR EMPLOYMENT

A *Person Affected.* Include:

1 Those removed for cause other than political activity.

\* \* \* \* \* \*

#### 68.8 INFORMAL HEARINGS BEFORE STATE COMMITTEE

A person suspended by the State committee may reply to the suspension notice in person. \* \* \* The personal appearance before the State committee in such situations shall constitute an informal hearing. The formal requirements relating to a review hearing do not apply. \* \* \* Minutes of the meeting shall be made and retained for the record.

#### 73 AVAILABILITY OF OFFICIAL RECORDS

The petitioner [9] shall be entitled to examine county office records necessary to his hearing. He shall not be permitted to examine or have access to confidential investigation or audit reports, or other confidential records. \* \* \* However, copies of unconfidential records may be prepared and supplied to the petitioner or his authorized representative. All necessary measures should be taken by the State committee to safeguard records which are pertinent to the hearing or to possible legal action against the petitioner.

#### 76 HEARING PROCEDURE

All members of the State committee should be present at the hearing, but in any event a quorum of the State committee must be present during the entire hearing. The chairman of the State committee shall preside at the hearing. \* \* \* The *State executive director shall present the facts upon which the action was based.* The chairman, members of the State committee, or others may, upon recognition of the chairman, question the petitioner or any of the witnesses. The entire hearing shall be conducted in a dignified, orderly, and just manner. The petitioner shall be given every reasonable opportunity to present \* \* \* evidence consistent with securing full and fair consideration. At the completion of the hearing, the chairman shall formally adjourn the hearing. He shall advise the petitioner that the State committee will take all of the evidence under consideration and will notify him in writing of its decision. (Emphasis added).

#### 78 STATE COMMITTEE DECISION

The State committee shall act in an impartial manner in arriving at its decision. It shall reach a conclusion only after careful consideration of all pertinent evidence. *The State committee should be prepared to furnish the complete information on which the decision is reached.* \* \* (Emphasis added).

It should be noted that the plaintiff was not removed for inefficiency or insubordination, but for "cause" i. e., seriously [10] impeding the effectiveness of the program administered in McCone County. He was thereby "automatically disqualified from further ASCS county service and employment".[11] In United States v.

---

9. By amendment 19, dated January 19, 1965, the words "appeal" and "appellant", theretofore used in the instructions, were changed to "review" and "petitioner".

10. The word "seriously" was deleted in amendment 19 of the State Administrative Handbook, dated January 19, 1965. It was, however, contained in 7 C.F.R. § 7.29, as read at the hearing on January 12, 1965. The word "seriously" was not used in the notice of suspension mailed November 19, 1964.

11. The minutes of a meeting of the State Committee held at Circle, Montana, on November 19, 1964, reflected that, "The alternatives offered the county committee concerning the position of Francis Kelly as office manager were reviewed. It was stated that he could be suspended with or without prejudice. The difference between the two is that he can be rehired by USDA at some future time if he is released without prejudice but cannot be rehired by USDA if he is fired with prejudice."

Rasmussen, supra, the County Manager was charged with "committing, or attempting to commit fraud in the conduct of his employment", another ground for suspension and removal under 7 C.F.R. § 7.29.

As pointed out in Rasmussen, the cases hold uniformly that where a hearing on the facts is required in adjudicating rights, each party has a right "to be apprised of all the evidence upon which a factual adjudication rests, plus the right to examine, explain or rebut all such evidence." Carter v. Kubler, 1943, 320 U.S. 243, 247, 64 S.Ct. 1, 3–4, 88 L.Ed. 26.

It was clear in Rasmussen that the State Committee had failed to comply with a specific regulation requiring a "review of the facts" on appeal.[12] As noted supra, subsequent to Rasmussen, this regulation was modified to delete any reference to "appeal" and in effect to limit the review to giving the employee an opportunity to present evidence to refute the charges against him.

On the other hand, the State Administrative Handbook still provides, inter alia, (1) that prior to suspension, the "State Committee *shall review all facts* available pertaining to acts committed by an individual as they relate to the definition of cause * * *"; (2) that the notice of suspension "shall set forth the reasons for the action in sufficient detail so as to enable the suspended person to be fully informed of the nature of the facts relied on for the action"; (3) that at the hearing, the "State Executive Director shall *present the facts upon which the action was based";* and (4) that the State Committee "shall reach a conclusion only after careful consideration of all pertinent evidence" and "should be prepared to furnish the complete information on which the decision is reached."

There was also filed as a part of the transcript a record of an informal hearing at Glendive, Montana, on June 12, 1963, "concerning charges made by the McCone ASC Committee in their letter of April 22, 1963." This letter complained of instructions alleged to have been received by the County Committee from a State ASC fieldman relative to obtaining a "yes vote" on a wheat referendum. The present proceeding, of course, is not concerned with the merits of that controversy. The complaint of the county committee and manager, if true, would not excuse misconduct on the part of the plaintiff.

On the other hand, the initiation of the investigation shortly after the complaint was received and relating, as it does, to transactions which were handled and audited many years before suggests that the investigation may well have been motivated by the complaint. Particularly in view of the obvious hostility between the State Committee and the local committee and its manager, any meaningful hearing by the State Committee would require "due process and fundamental fairness" in the proceedings.

In United States v. Rasmussen, supra, this court considered many of the cases relating to the discharge of employees by executive officers. A leading case is Greene v. McElroy, 1959, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, where the Government had revoked the security clearance of petitioner, the manager of a private corporation engaged in developing and producing goods involving military secrets for the armed forces. As a consequence petitioner was discharged from his job. The Court said in part:

> "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportu-

12. In Rasmussen the court pointed out (footnote 8) that it was unnecessary "to determine whether the state committee would have had the right to suspend and remove defendant on a charge of fraud without a hearing and without an appeal in the absence of any regulations."

nity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots." (360 U.S. at 496, 79 S.Ct. at 1413).

The general rule set forth in Greene v. McElroy was qualified in the subsequent case of Cafeteria and Restaurant Workers Union v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230, where the Court held that the summary dismissal and exclusion of a cook from the premises of a Naval Gun factory for security reasons, without a hearing and without advice as to the specific grounds for her exclusion, did not violate the Due Process Clause of the Fifth Amendment. The Court pointed out that there was "nothing to indicate that this determination would in any way impair (petitioner's) employment opportunities anywhere else." Mr. Justice Brennan, with whom the Chief Justice, Mr. Justice Black and Mr. Justice Douglas joined, dissented, taking the position that petitioner was deprived of due process.[13]

In Willner v. Committee on Character, 1963, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed. 2d 224, the Court had occasion to comment further with reference to the scope of the rules set forth in Greene and Cafeteria Workers. There it was stated:

"We have emphasized in recent years that procedural due process often requires confrontation and cross-exam-

ination of those whose word deprives a person of his livelihood. See Greene v. McElroy, 360 U.S. 474, 492, 496–497, 79 S.Ct. 1400, 1411, 1413, 3 L.Ed.2d 1377, and cases cited. Cf. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230, where only 'the opportunity to work at one isolated and specific military installation' was involved. Id., at 896, 81 S.Ct., at 1749." (373 U.S. at 103, 83 S.Ct. at 1180).

Under Greene v. McElroy and other cases cited supra, three questions are presented:

(1) Was there a sufficient compliance with the pertinent regulations and instructions in plaintiff's suspension and removal by the State Committee?

(2) Did due process require further presentation of the facts on which the State Committee acted, together with the rights of confrontation and cross-examination?

(3) Was there a rational basis for the conclusions and action of the State Committee?

While, as noted supra, the regulations and instructions have been modified substantially since United States v. Rasmussen was decided, I do not believe it can be said that there was a full compliance with the instructions in effect when plaintiff was suspended and removed. In particular, it is questionable whether the notice of suspension sets forth reasons "in sufficient detail so as to enable the suspended person to be fully informed of the nature of the *facts* relied on for the action". Nor did the State Director (or his attorney on his behalf) at the hearing "present the *facts* upon which the action was based". Nor did the letter of removal "furnish the complete infor-

13. The Court in Cafeteria Workers also emphasized another factor as important to the decision which was not present in Greene v. McElroy, and is not present in the instant case. That is "the historically unquestioned power of a commanding officer summarily to exclude civilians from the area of his command." (367 U.S. at 893, 81 S.Ct. at 1748). While the Court found that the

commanding officer had followed the applicable regulation which gave him specific authority to exclude the employee, it pointed out that the regulation was no more than "the verbalization of the unquestioned authority which commanding officers of military installations have exercised throughout our history." (367 U.S. at 892, 81 S.Ct. at 1747).

mation on which the decision was reached".[14] Certainly plaintiff's attorney, by letter and orally at the hearing, repeatedly requested further information regarding the facts upon which the action was taken.

Assuming, however, that the notices and the hearing complied sufficiently with pertinent regulations and instructions, did due process require further information regarding the facts upon which the State Committee acted, together with the right of confrontation and cross-examination, even though not required by existing regulations and instructions?

■ I agree with defendants that a dismissed Government employee has no inherent constitutional right to a hearing with all the requirements of due process. On the other hand, it is clear also that due process may require procedures in some circumstances different from that required in others. Hannah v. Larche, 1960, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307;[15] Studemeyer v. Macy, 1963, 116 U.S.App.D.C. 120, 321 F.2d 386, 388.[16]

It is important to keep in mind that plaintiff was dismissed for "cause", i. e., seriously impeding the effectiveness of the farm program in McCone County, and that he is barred from future employ-ment by the Department. While there is no proof that he could not find employment elsewhere, it is significant that he had worked for the County ASCS Committee for 14 years, except for the time spent in military service, and at the time of his dismissal was holding a responsible position. Moreover, the defendants themselves recognize that there is a distinction between a dismissal without prejudice, in which event plaintiff could be rehired by the Department, and a dismissal with prejudice, after which he could not be rehired. (See footnote 11.)[17]

■■ In view of the nature of the charges and the fact that plaintiff is barred by the removal action from future employment by the Department, I can not escape the conclusion that this case comes within the ambit of Greene v. McElroy. As noted supra, the Court there held that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings," due process requires the disclosure of the evidence in support of the Government's case, including the rights of confrontation and cross-examination.

Nor do I believe this court is in a position to determine, from the evidence

14. In fact, it can not be determined from the notice of removal which specific contracts defendants relied upon in taking action. As noted supra, at the outset of the hearing, plaintiff was informed that one of the contracts (that of E. C. Casterline and Willard Casterline) was "not material"; and counsel stated that he was not sure that one other contract (that of J. R. Hansen) involved "any culpability" on the part of plaintiff.

15. In Hannah v. Larche, the Court, in holding that rules of procedure adopted by the Commission on Civil Rights did not violate due process, pointed out (1) that the Commission was engaged in "investigative" rather than "fact finding" functions; and (2) that the act creating the Commission itself prescribed certain rules of procedure and authorized the supplementary rules adopted by the Commission, thus distinguishing Greene v. McElroy.

16. In Studemeyer v. Macy, which involved the discharge of a civilian employee of the Air Force, the "primary reason was insubordination, but the notice of proposed removal also referred to other disciplinary action of a minor character in appellant's past record." (321 F.2d at 387, note 1). The court distinguished Greene v. McElroy on the ground that the employee was discharged for a "cause which has no such impact upon his reputation as was dealt with * * * in Greene v. McElroy * * *." (321 F.2d at 388).

17. Moreover, instructions relative to "Removal Action by the State Committee" provide that, "It is of the utmost importance that the State Committee consider whether the nature of the charges and the facts are grave enough to warrant removal"; and that, "Except in the most serious cases" other alternatives are available.

before it, whether there was a "rational basis for the action taken by the State Committee". It may reasonably be inferred from the evidence (including in particular plaintiff's own statements) that plaintiff did in fact give instructions which were contrary to the regulations promulgated by the Secretary. On the other hand, as far as disclosed by the evidence before the court, all of the questionable transactions occurred several years prior to the investigation upon which plaintiff's dismissal was predicated, and the erroneous instructions were given with the advice and approval of the State Director and fieldman then in office. It is of course possible that the investigation and other proof upon which defendants rely in suspending and removing plaintiff did not sustain plaintiff's testimony in this regard. Nevertheless, it is clear that defendants relied upon audits, investigative reports, and statements from witnesses which were not disclosed to the plaintiff and which are not a part of the record before this court.

The motion of the defendants for summary judgment is denied. I have concluded that before ruling on plaintiff's motion I should give both sides an opportunity to express their views with respect to the procedure to be followed in the light of the foregoing opinion, particularly in view of the fact that plaintiff seeks reinstatement.[18]

18. The general rule in "pay cases" was summarized by the Court of Claims in Hanifan v. United States, 1965, 354 F.2d 358, 364, as follows:

"The rule has been firmly established in pay cases 'that unlawful administrative action depriving a claimant of a procedural right voids the action and leaves the plaintiff entitled to his money otherwise due, until (at the least) proper procedural steps are completed * * *.' Garrott v. United States, 169 Ct.Cl. 186, 340 F.2d 615 (January 1965). * * * No more than in the case of a procedural violation by the employing agency * * * is there a requirement that the employee show that he would not have been discharged had he been accorded his procedural rights by the Commission. Cf. Greene v. United States, 376 U.S. 149, 162, 84 S.Ct. 149, 11 L.Ed.2d 576 (1964); Silver v. New York Stock Exchange, 373 U.S. 341, 365, 83 S.Ct. 1246, 10 L.Ed.2d 389, fn. 18 (1963)."

The court noted that, "Since reinstatement cases in the district courts seek restoration to duty, not merely damages for an illegal discharge, it is possible that the rule for those cases may be different." (Note 4).