Jon HEDMAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 356–86C.

United States Claims Court.

July 25, 1988.

Supplemental Memorandum Order
Aug. 24, 1988.

Zenas Baer, Hawley, Minn., attorney of record for plaintiff.

Stuart James, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

A. *Preliminary Matters*

Plaintiff, Jon Hedman, a former County Executive Director for the Agricultural Stabilization and Conservation Service (ASCS) County Committee, Clay County, Minnesota (hereinafter County Committee), filed the instant complaint against the defendant herein, alleging breach of an implied-in-fact employment contract and

wrongful termination. Therein, plaintiff is claiming entitlement to damages in the amount of $128,000, representing: (1) lost past, current and future earnings; (2) severance pay; and (3) consequential and special damages. Plaintiff also seeks reinstatement retroactive to August 20, 1984 or, alternatively, that the ban on future employment be lifted.

Plaintiff premises jurisdiction on the Tucker Act, 28 U.S.C. § 1491(a)(1),[1] apparently upon the purported violation of federal regulations of an executive department, and the alleged breach of an implied-in-fact employment contract.

Subject matter is now before this court on defendant's RUSCC 12(b)(4) motion to dismiss for failure to state a claim upon which relief can be granted. Said motion avers that the plaintiff's pleadings neglect to cite to a statute or regulation in support of a claim for money damages against the United States. Defendant contends, in this connection, that absent a showing of a statutory or regulatory authority mandating the payment of money damages, the plaintiff may not invoke this court's Tucker Act jurisdiction. We grant defendant's motion to dismiss as to back pay and reinstatement, and deny said motion regarding plaintiff's severance pay claim.

B. *Characterization of Defendant's Motion to Dismiss*

■ As a preliminary matter, it is noted that although defendant seeks dismissal of the complaint for failure to state a claim upon which relief can be granted under RUSCC 12(b)(4), the motion in part properly lies under RUSCC 12(b)(1), because defendant argues that the complaint fails to invoke a basis for the exercise of subject matter jurisdiction. The distinction between RUSCC 12(b)(1) and 12(b)(4), we believe, is significant, for a dismissal under 12(b)(1) for want of jurisdiction is not an adjudication on the merits, whereas dismissal under 12(b)(4) for failure to state a claim would bar a future suit by this plaintiff. *See Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). *See Indium Corp. of America v. Semi-Alloys Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

In either case, in addressing a jurisdictional question, we note that the court must accept as true all *undisputed* facts alleged by the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746, 747 (Fed.Cir.1988). However, in ruling on defendant's motion to dismiss for want of jurisdiction, the court may make such factual findings, with regard to disputed facts, that are decisive of the jurisdictional issue.[2] Accordingly, in treating defendant's motion in part as one to dismiss for lack of subject matter jurisdiction, the court finds the following facts, *infra.*

*Statement of Facts*

Plaintiff was continuously employed by ASCS County offices from 1962 through 1984. From 1966 through 1975, he served as County Executive Director in St. Louis County, Minnesota. Thereafter, on or about October 26, 1975, he began employment as the Clay County, Minnesota, Executive Director. Plaintiff continued in that capacity until September 5, 1984, the date on which he was terminated "for cause" by the County Committee.

The foregoing circumstance allegedly occurred against the background that the Clay County ASCS office was understaffed

---

1. Claims Court jurisdiction under 28 U.S.C. § 1491 embraces:
   ... any claim against the United States founded either upon the Constitution or any Act of Congress, or any regulation of an executive department or upon any express or implied contract with the United States.

2. A federal court may make factual findings which are decisive of the jurisdictional issue.

That is to say, the court, on a motion to dismiss for want of jurisdiction, is not limited to an inquiry into undisputed facts. It may decide for itself the factual issues pertinent to resolving jurisdiction. *See Mark Smith Const. Co., Inc. v. United States,* 10 Cl.Ct. 540, 541 n. 1 (1986); *Fidelity & Deposit Co. of Maryland v. United States,* 2 Cl.Ct. 137, 145 (1983).

and the operations therein backlogged. After requests by plaintiff for authorization to hire an additional program assistant, the County Committee, on September 15, 1983, in agreement, submitted plaintiff's request to the District Director of the State ASCS office for approval. The State ASCS office, however, denied the request.[3]

What transpired next is unclear from the record, for, in April 1984, plaintiff received a complaint from his supervisors regarding "deficiencies" in his management of the Clay County office. Consequently, a meeting was held on or about April 11, 1984, wherein the plaintiff, the County Committee, the State Executive Director, the State Administrative Chief, and the District Director discussed plaintiff's alleged performance deficiencies. According to plaintiff, during said meeting he was instructed to cease contact with the print and electronic media, and was further ordered to submit a detailed monthly plan of operations. After the April 11, 1984 meeting, defendant confirmed in writing that the Clay County office's operations would thereafter be reviewed in October 1984.

In the interim, and in spite of the aforementioned representation to plaintiff that operations would be reviewed in October, around early August 1984, the County Committee contacted the State ASCS office for assistance and guidance in connection with the institution of termination proceedings against plaintiff. Shortly thereafter, plaintiff was served with a Notice of Suspension from the County Committee on August 20, 1984, wherein it was alleged that plaintiff had "failed to perform the duties of [his] office or employment" and also that plaintiff had "imped[ed] the effectiveness of [the ASCS] program...." Plaintiff immediately responded to said charges, stating that the administrative problems within his office were a direct consequence of inadequate personnel to cover the daily operations. Notwithstanding plaintiff's explanation for the cause of the deficiencies, the County Committee refused to reinstate him; and on September 5, 1984, effectuated termination.[4]

Plaintiff contends, and defendant admits, that when hired as Clay County Executive Director, the terms and conditions of his employment were embodied in the ASCS's personnel manual, Publication 22-PM.[5] Specifically, the terms and conditions for separation procedures were contained in Part 10,[6] ¶¶ 411–459. Therefore, pursuant to Publication 22-PM, ¶¶ 411–459 and as required by 7 C.F.R. § 7.31 (1984),[7] on September 18, 1984, plaintiff appealed the County Committee's decision to terminate to the State ASCS Committee.

---

**3.** Notwithstanding the workload problem, conceded at least by the County Committee on September 15, 1983, plaintiff received continuous satisfactory performance ratings up to and *including* his last, on December 8, 1983. As Executive Director, plaintiff was subject to review annually, by either the State ASCS Executive Director, his designee, or the County Committee.

**4.** Approximately one year after plaintiff was terminated, the staff in the Clay County office increased from 10 to 18 employees.

**5.** Publication 22-PM is the short title for the ASCS Handbook, County Office Personnel Management for State and County Offices. The Handbook is promulgated by the United States Department of Agriculture, Agricultural Stabilization and Conservation Service, Washington, D.C., pursuant to authority delegated thereto under the Soil Conservation and Domestic Allotment Act, 16 U.S.C. §§ 590d and 590h, and 7 C.F.R. § 7.38. *See* Publication 22-PM, Part 1, ¶ 7. Said handbook provides specific "instruc-

tions to State and County Offices on all phases of the personnel management program for County office employees and Committee members." Publication 22-PM, Part 1, ¶ 1, based upon the general provisions for such contained at 7 C.F.R. Part 7.

**6.** Although plaintiff states that the separation procedures were contained in Part 3 of Publication 22-PM, the certified copy of said publication, filed with this court on June 28, 1988, lists such procedures at Part 10. The date this publication was revised is listed as August 8, 1984. Thus, this document represents an authentic compilation of the relevant procedures in effect on the date plaintiff was terminated, *i.e.*, September 5, 1984. Accordingly, all references in this opinion will pertain to the copy of Publication 22-PM filed in this court June 28, 1988.

**7.** Many of the provisions for terminating the County Executive Director contained in the manual are codified in general terms in the Code of Federal Regulations, 7 C.F.R. §§ 7.29 to 7.31 (1984).

There, the plaintiff challenged the County Committee's alleged disregard of the relevant procedures for termination contained in Publication 22–PM, and charged that the County Committee was unaware of such operative provisions when it terminated plaintiff "for cause." Plaintiff maintained that the County Committee neglected to even minimally consider relevant mitigating factors (contained in Publication 22–PM, ¶ 413) when removing him "for cause". Moreover, plaintiff claimed that other procedures (including ¶¶ 431A(2), 433A and B, and 466A and B, *et al.*) were not followed by the County Committee prior to terminating him "for cause". Nonetheless, the State ASCS Committee denied plaintiff's request for reinstatement and backpay on October 15, 1984.

Following thereon, plaintiff appealed to the Deputy Administrator, State and County Operations, ASCS, United States Department of Agriculture, in Washington, D.C., on November 7, 1984, pursuant to Publication 22–PM, ¶¶ 450 and 451, and as permitted under 7 C.F.R. § 7.31 (1984). An administrative hearing was held on January 18–19, 1985, in Morehead, Clay County, Minnesota, wherein plaintiff requested reinstatement, salary, insurance, and other benefits retroactive to the date of suspension. Plaintiff's appeal was denied by the Acting Deputy Administrator (Roy T. Cozart) by an order dated March 18, 1985.

After exhausting the foregoing administrative remedies,[8] on April 22, 1985, a "Petition for Review of (an) Agency Decision Pursuant to 5 U.S.C. § 701, et seq." was filed in the United States District Court for the District of Minnesota, 3rd Division, case no. 6–85–760. Plaintiff there alleged that he was denied, *inter alia,* due process and equal protection under the 5th and 14th Amendments. This petition was dismissed by an order of the court for *lack of subject matter jurisdiction* on February 28, 1986.

Plaintiff next filed the instant complaint with this court, thereafter, on June 6, 1986, alleging that the ASCS County Committee for Clay County, "a division of the United States Department of Agriculture,"[9] had breached an implied-in-fact employment contract between the parties ostensibly entered into on October 26, 1975, the date plaintiff was hired as Clay County Executive Director. Additionally, plaintiff claimed that he was wrongfully terminated "for cause" in breach of the procedural safeguards contained in the ASCS's personnel manual, Publication 22–PM. Plaintiff's contract theory of recovery rests, therefore, upon the assumption that said *manual* created an implied-in-fact contract which governed the terms and conditions of his employment with the ASCS County Committee.

*Contentions of the Parties on Motion to Dismiss*

A. *Defendant*

Defendant raises a plethora of arguments in support of its motion to dismiss. In general, defendant maintains that Tucker Act jurisdiction is lacking in this case. This is so, defendant asserts, because said Act *ipso facto* does not create any substantive rights enforceable against the United States; and the plaintiff is necessarily compelled, and fails, to demonstrate that the basis for his substantive rights arose under some other independent source of law, *e.g.,* the Constitution, an Act of Congress, or any regulation of an executive department. Moreover, defendant's arguments encompass two distinct, mutually exclusive assertions: *i.e.,* plaintiff *is not* a federal employee because he does *not* meet the definition of § 2105, Title 5 U.S.C.; and, even assuming plaintiff's contention that he *is* a federal employee, no implied-in-fact contract arises because such an employment relationship is statutory rather than contractual in that the subject serves by appoint-

---

8. 7 C.F.R. § 7.34 (1984) provides that the determination of the Deputy Administrator is final and not subject to further administrative review.

9. The plaintiff asserts (and the defendant denies) that the ASCS County Committee is a "division" of the United States Department of Agriculture.

ment.[10]

## B. *Plaintiff*

Unfortunately, the plaintiff offers a melange of somewhat circular legal reasoning in support of its jurisdictional assertions. Without obfuscating this opinion, plaintiff's arguments can be best summarized as follows:

(i) Publication 22–PM created an *implied-in-fact contract* between him and the defendant;

(ii) The requisite contractual employment relationship is manifest by the "express or implied contract" (*i.e.*, Publication 22–PM) for jurisdictional purposes under the Tucker Act;

(iii) Publication 22–PM's back pay provision is tantamount to a "regulation" which "provides for money damages against the United States and forms the basis for a claim cognizable under the Tucker Act";

(iv) Defendant's failure to comply with Publication 22–PM's procedures constituted a violation of "a regulation of an executive department" that expressly provides for money damages, thus fixing Tucker Act jurisdiction;

(v) Defendant's argument that plaintiff is not a federal employee, as described under 5 U.S.C. § 2105 (for purposes of applying the Back Pay Act, 5 U.S.C. § 5596), *supports* plaintiff's assertion that employment by the County Committee created an implied-in-fact employment contract;[11] and

(vi) The United States has presumptively consented to suit based upon the Department of Agriculture's express provision for money damages contained in Publication 22–PM, ¶ 455.

Against this background, this court will now undertake to disentangle the elusive factual and legal issues postured herein.

## Issues

The dispositive factual question raised in this case centers around plaintiff's employment status within the ASCS. This is true, because a finding that Hedman is a federal employee would defeat the contract claims asserted in this court under the Back Pay Act, 5 U.S.C. § 5596. On the other hand, such a finding would support his claim under the Severance Pay Act, 5 U.S.C. § 5595. Therefore, the pivotal issue this court must address is whether, in fact, plaintiff is a federal employee. Because we answer this question affirmatively, this court must conclude that it does not have subject matter jurisdiction with regard to the plaintiff's back pay claim.

## Discussion

### A. *Historical Development and Organizational Background of the Department of Agriculture, the Agricultural Stabilization and Conservation Service, and the ASCS State and County Committees*

Several salient factors surrounding this court's jurisdiction necessarily mandate a sharp understanding of the relationship between the Department of Agriculture (DOA), the Agricultural Stabilization and Conservation Service, and the ASCS State and County Committees. Therefore, the following information is submitted.

In 1889, the Department of Agriculture gained cabinet status by the Act of February 9, 1889, ch. 122, §§ 1, 4, 25 Stat. 659 (1889) (codified as amended at 7 U.S.C. § 2201 *et seq.*). Pursuant to this Act, the DOA was made the eighth executive department within the federal government under the supervision and control of the Secretary of Agriculture (hereinafter Secretary). 9 Harl.Agricultural Law § 63.02, pp. 63–7 through 63–8.

The Secretary established the Agricultural Stabilization and Conservation Service (ASCS) pursuant to the authority vest-

---

**10.** We view defendant's arguments to be averred in the alternative.

**11.** This assertion is apparently pursuant to 7 C.F.R. § 7.21(b) as well as to the provisions of Publication 22–PM.

ed in it under, *inter alia*, 5 U.S.C. § 301,[12] Reorganization Plan No. 2 of 1953, 5 U.S.C. App. pp. 291–292,[13] and the Soil Conservation and Domestic Allotment Act (the Act), 16 U.S.C. § 590h(b).[14] The ASCS was es-

12. 5 U.S.C. § 301, relating to the promulgation of departmental regulations, provides in pertinent part:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property....

13. 5 U.S.C.App. pp. 291–92, Reorganization Plan No. 2 of 1953, provides in pertinent parts:

> Sec. 1. Transfer of functions to the Secretary. (a) Subject to the exceptions specified in subsection (b) of this section, there are hereby transferred to the Secretary of Agriculture all functions not now vested in him of all other officers, and of all agencies and employees, of the Department of Agriculture.
>
> (b) This section shall not apply to the functions vested by the Administrative Procedure Act [sections 551 and 701 et seq. of this title] in hearing examiners employed by the Department of Agriculture....
>
> \* \* \* \* \* \*
>
> Sec. 4. Delegation of functions. (a) The Secretary of Agriculture may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of Agriculture of any function of the Secretary, including any function transferred to the Secretary by the provisions of this reorganization plan.
>
> (b) To the extent that the carrying out of subsection (a) of this section involves the assignment of major functions or major groups of functions to major constituent organizational units of the Department of Agriculture, now or hereafter existing, or to the heads or other officers thereof, and to the extent deemed practicable by the Secretary, he shall give appropriate advance public notice of delegations of functions proposed to be made by him and shall afford appropriate opportunity for interested persons and groups to place before the Department of Agriculture their views with respect to such proposed delegations.
>
> (c) In carrying out subsection (a) of this section the Secretary shall seek to simplify and make efficient the operation of the Department of Agriculture, to place the administration of farm programs close to the State and local levels, and to adapt the administration of the programs of the Department of regional, State, and local conditions.
>
> Sec. 5. Incidental transfers. The Secretary of Agriculture may from time to time effect such transfers within the Department of Agriculture of any of the records, property, and

personnel affected by this reorganization plan and such transfers of unexpended balances (available or to be made available for use in connection with any affected function or agency) of appropriations, allocations, and other funds of such Department, as he deems necessary to carry out the provisions of this reorganization plan; but such unexpended balances so transferred shall be used only for the purposes for which such appropriation was originally made.

14. 16 U.S.C. § 590h(b), Payments and grants of aid, provides in pertinent part:

> (b) Payments and grants of aid; local, county, State committees, rules and regulations; ... In carrying out the provisions of this section in the States ..., the Secretary is directed to utilize the services of local and State committees selected as hereinafter provided. The Secretary shall designate local administrative areas as units for administration of programs under this section.... Farmers within any such local administrative area, and participating or cooperating in programs administered within such area, shall elect annually from among their number a local committee of not more than three members for such area. The members of the local committees shall, in a county convention, nominate and elect a county committee which shall consist of three members who are farmers in the county. At the first county convention held on or after the effective date of this sentence, one member of the county committee shall be elected for one year; one member shall be elected for two years; and one member shall be elected for three years. Thereafter, each member of a county committee shall be elected for a term of three years. No member of the county committee shall be elected for more than three consecutive terms.... The local committee shall select a secretary and may utilize the county agricultural extension agent for such purpose. The county committee shall select a secretary who may be the county agricultural extension agent.... In any county in which there is only one local committee the local committee shall also be the county committee. In each State there shall be a State committee for the State composed of not less than three or more than five farmers who are legal residents of the State and who are appointed by the Secretary. The State director of the Agricultural Extension Service shall be ex officio a member of such State committee.... The Secretary shall make such regulations as are necessary relating to the selection and exercise of the functions of the respective committees, and to the administration, through such committees, of such programs....

tablished on June 5, 1961,[15] as the *agency* of the Department that administers, *inter alia,* commodity and related land use programs designed for voluntary production adjustment, resource protection, and farm income stabilization.[16] *See also, Gibson v. United States,* 11 Cl.Ct. 6, 8 (1986); and 9 Harl.Agricultural Law § 63.07[1], pp. 63–112 through 63–116. In conjunction with the establishment of the ASCS, the Secretary designated State and County offices of the ASCS which were to serve as "local administrative areas [and] as units for administration of programs" under the Act. 16 U.S.C. § 590h(b).

In order to meet the goals of the Soil Conservation and Domestic Allotment Act, and carry out the programs thereunder, the Secretary is also authorized to staff the ASCS State and County offices.[17] Such officers and employees therein are appointed, *"subject to the provisions of the civil-service laws and the Classification Act of 1923, as amended."* 16 U.S.C. § 590d,[18] 49 Stat. 164, ch. 85, § 4(2).[19] State Committees (appointed by the Secretary, 16 U.S.C. § 590h(b)) and County Committees (elected by local farmers, 16 U.S.C. § 590h(b)) are also used to administer programs under the Act.[20] A County Executive Director is selected by the County Committee, *subject to* standards and qualifications set by the State Committee. 7 C.F.R. § 7.21(b); Publication 22–PM, Part 5, ¶¶ 87 and 88. The County Executive Director is authorized to

---

**15.** *See The United States Government Manual, 1987/88, Office of the Federal Registrar, National Archives and Record Administration,* p. 121.

**16.** *Id.*

**17.** The Secretary delegated his authority to supervise and to direct State and County ASCS offices, and to designate functions to be performed by the State and County Committees, to the Under Secretary, International Affairs and Commodity Programs, 7 C.F.R. § 2.21(b)(2) (1984). The Under Secretary, in turn, delegated this authority to the Administrator of the Agricultural Stabilization and Conservation Service, Washington, D.C. 7 C.F.R. § 2.65(20). The Under Secretary also delegated: (a) supervision of the County Committees to the State Committee, 7 C.F.R. § 7.21; (b) authority to select a County Executive Director to the County Committee, 7 C.F.R. § 7.21(b); and (c) authority to staff County offices to the County Executive Director, 7 C.F.R. § 7.26(b).

**18.** 16 U.S.C. § 590d provides in pertinent part: § 590d. Cooperation of governmental agencies; officers and employees, appointment and compensation; expenditures for personal services and supplies

For the purposes of this Act, the Secretary of Agriculture may—

   *  *  *  *  *  *

(2) Subject to the provisions of the civil-service laws and Classification Act of 1923, as amended, appoint and fix the compensation of such officers and employees as he may deem necessary, except for a period not to exceed eight months from the date of this enactment [enacted Apr. 27, 1935], the Secretary of Agriculture may make appointments and may continue employees of the organization heretofore established for the purpose of administering those provisions of the National Industrial Recovery Act which relate to the prevention of soil erosion, without regard to the civil-service laws or regulations and the Classification Act, as amended, and any person with technical or practical knowledge may be employed and compensated under this Act on a basis to be determined by the Civil Service Commission; and

(3) Make expenditures for personal services ... and perform such acts, and prescribe such regulations, as he may deem proper to carry out the provisions of this Act.

**19.** *See also, Protection of Land Resources Against Soil Erosion,* S.Rep. No. 466, 74th Cong., 1st Sess. at 4 (1935), which states—"Subsection 2 of section 4 (codified at 16 U.S.C. § 590d) as amended, places officers and employees *who will administer the act under civil service,* except that employees of the Soil Erosion Service need not go under civil service for a period of 8 months from the date of the act."

**20.** In clarification, it is noted that the Secretary's use of State and County committees began *prior* to the creation of the ASCS, with the enactment of the Soil Conservation and Domestic Allotment Act. The committees were initially supervised by other agencies within the Department, not relevant to this discussion.

After the pronouncement of Reorganization Plan No. 2 of 1953, the supervision of the Committees was assigned to the Commodity and Stabilization Service (predecessor to the ASCS). *See Baker, et al.,* CENTURY OF SERVICE: The First 100 Years of THE UNITED STATES DEPARTMENT OF AGRICULTURE, Economic Research Service, Agricultural History Branch, pp. 378–409. In 1961, the Secretary transferred supervision of the State and County Committees to the ASCS, where it remains today. *See* footnote 18, *supra. See also, The United States Government Manual, 1987/88, Office of the Federal Registrar, National Archives and Record Administration,* p. 121.

hire other necessary staff to carry on day-to-day operations of the county office. 16 U.S.C. § 590h(b); 7 C.F.R. §§ 7.4 to 7.15 and 7.26(a); Publication 22–PM, Part 5, ¶ 90; 9 Harl.Agricultural Law § 63.07[1], pp. 63–115 through 63–116.

Based upon the foregoing historical and organizational overview, it is readily apparent that: (i) the Agricultural Stabilization and Conservation Service is a duly authorized federal agency, under the direct supervision of the Under Secretary of Agriculture, International Affairs and Commodity Programs; (ii) the Agricultural Stabilization and Conservation Service State and County offices are localized units of administration for the federal programs administered by the ASCS and are part and parcel of the ASCS; (iii) all employees of the ASCS are subject to civil service laws unless excepted therefrom; (iv) the State Committee (which is comprised of individuals appointed directly by the Secretary) is responsible for ASCS State office supervision, and generally supervises ASCS County office operations, as well as County Committee activities; (v) the County Committees provide local input into the administration of the federal programs which affect their communities; and (vi) the County Committees "supervise" the County offices vicariously, *i.e.*, through their input in selecting a County Executive Director, and interaction with this individual thereafter. Against this background, we now examine the personnel status of plaintiff in the capacity as a County Executive Director within in the ASCS County offices. The court's analysis concludes that plaintiff was, during the years in issue, in the competitive service, and his position description also met the definitions of a § 2105 employee.

## B. *Civil Service Classification*

As stated, *supra*, the Secretary is authorized to appoint individuals to work in the ASCS County offices, subject to civil service laws. Although such authority is delegated to other officers and employees, it must be remembered that any hiring authority exercised under such programs is subject to this legislative precept. Therefore, it is concluded that employees within the County ASCS offices fall under civil service rules and regulations codified at 5 U.S.C. § 3301, and Title 5 of the Code of Federal Regulations, unless specifically excepted therefrom. The civil service rules, located at 5 C.F.R., subchapter A, apply to all positions in the *competitive* service and incumbents therein, but not to positions in the *excepted* service. 5 C.F.R. § 1.1 (1984). The competitive service includes all civilian positions in the executive branch of the government, unless specifically excepted from the civil service by or under statute. *See* 5 U.S.C. § 2102(a)(1)(A);[21] 5 C.F.R. § 6.1 (1984); 5 C.F.R. § 1.2 (1984).

In order to provide notice to incumbents therein, the Office of Personnel Management (OPM) publishes a cumulative list annually in the Federal Register (Schedules A, B, & C) of those positions classified as civil service excepted positions. 5 C.F.R. § 6.2 (1984).[22] Inasmuch as the ASCS County offices are agencies within the ex-

---

**21.** 5 U.S.C. § 2102 provides in pertinent part:
§ 2102. The competitive service
(a) The "competitive service" consists of—
(1) all civil service positions in the executive branch, except—
(A) positions which are specifically excepted from the competitive service by or under statute;
(B) positions to which appointments are made by nomination for confirmation by the Senate, unless the Senate otherwise directs; and
(C) positions in the Senior Executive Service;
(2) civil service positions not in the executive branch which are specifically included in the competitive service by statute; and

(3) positions in the government of the District of Columbia which are specifically included in the competitive service by statute.
(b) Notwithstanding subsection (a)(1)(B) of this section, the "competitive service" includes positions to which appointments are made by nomination for confirmation by the Senate when specifically included therein by statute.
(c) As used in other Acts of Congress, "classified civil service" or "classified service" means the "competitive service."

**22.** OPM Excepted Service Consolidated Listing of Schedule A, B, and C Exceptions, 49 Fed.Reg. 38724, *et seq.* (1984), codified at 5 C.F.R. § 213.101, *et seq.* (1984).

ecutive branch of government and their employees are appointed subject to civil service laws, excepted positions must be included in one of the schedules published by the OPM. A thorough review of the consolidated notice of *all* positions excepted under Schedules A, B, and C as of June 30, 1984, discloses that the position of the County Executive Director of the ASCS is absent therefrom. Therefore, based upon the facts that—(i) the plaintiff held a civil service position in the executive branch of government; and (ii) Congress decreed that employees such as plaintiff be placed under civil service laws (16 U.S.C. § 590d), this court finds that plaintiff was a civil service employee appointed into the competitive service.

### C. *Was Plaintiff An Employee Under 5 U.S.C. § 2105?* [23]

■ To be considered a federal employee for purposes of § 2105, the person must (i) be appointed by an authorized federal employee or officer; (ii) perform a federal function; and (iii) be subject to supervision by a federal employee or officer as defined under § 2105. *See Watts v. Office of Personnel Management,* 814 F.2d 1576, 1579 (Fed.Cir.1987); *Costner v. United States,* 229 Ct.Cl. 87, 93, 665 F.2d 1016, 1019–20 (1981); *Lambert v. United States,* 4 Cl.Ct. 303, 305 (1984). Each of the foregoing requirements must be satisfied. *Watts,* 814 F.2d at 1579; *Lambert,* 4 Cl.Ct. at 305. Thus, this court will examine, in seriatim, each of the aforementioned elements in light of the information presented, *supra,* and case law relevant to the issue.

### 1. *Appointment*

The essential prerequisites of "appointment" to civil service as an employee are— (1) an authorized appointing officer who takes action and reveals his awareness that he is making an appointment in the civil service; *and* (2) action by the appointee denoting acceptance. *Watts,* 814 F.2d at 1579.

As noted, *supra,* the Secretary is authorized under 16 U.S.C. § 590d to *appoint* such officers and employees as he may deem necessary to carry out the various programs under the Soil Conservation and Domestic Allotment Act. Also noted, *supra,* is the fact that the Secretary has promulgated regulations which effectively, "establish 'a hierarchy of command' with general supervision being delegated to a Deputy Administrator (of the ASCS) who acts for the Secretary in the daily administration of the various agricultural programs." *See Duba v. Schuetzle,* 303 F.2d 570, 571 (8th Cir.1962); *Gibson,* 11 Cl.Ct. at 8; *Wollman v. Gross,* 484 F.Supp. 598, 601 (D.S.D.), *aff'd,* 637 F.2d 544 (8th Cir.1980), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *United States v. Rasmussen,* 222 F.Supp. 430, 441 (D.Mont. 1963); and 7 C.F.R. § 7.20.

In other words, the Secretary has delegated *his* authority to "appoint" the various employees utilized in the daily administration of agricultural programs, such as those administered by the County offices of the ASCS. This authority to appoint employees of the ASCS county offices has been delegated from the Secretary to the State Committee, an "authorized appoint-

---

**23.** 5 U.S.C. § 2105 provides in pertinent part:
§ 2105. Employee
(a) For the purpose of this title, "employee," except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—
  (1) appointed in the civil service by one of the following acting in an official capacity—
    (A) the President;
    (B) a Member or Members of Congress, or the Congress;
    (C) a member of a uniformed service;
    (D) an individual who is an employee under this section;
    (E) the head of a Government controlled corporation; or
    (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;
  (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
  (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

ing authority" for purposes of § 2105, as established, *infra*.[24]

Additionally, Publication 22–PM [25] (which as noted, *supra*, is promulgated and issued by the ASCS, Washington, D.C., pursuant to the authority delegated from the Secretary under 7 C.F.R. § 7.38) provides at Part 5, ¶ 87, that the basic requirement for filling a vacancy, *including* County Executive Director, is that it may not be filled *until approved by the State Executive Director*.[26] Publication 22–PM, ¶ 87(A)(3). The State Executive Director's authorization is limited to those policies *established by* the State Committee. Publication 22–PM, ¶ 87(B). This comports with the dictates at 7 C.F.R. § 7.21(b) (1984) which states that the County Committee may employ a County Executive Director *subject to* State Committee approval. Thus, the *ultimate* hiring authority for the ASCS County Executive Director in reality rests with the State Committee, not the County Committee. Therefore, we find that plaintiff was duly "appointed" for purposes of § 2105.

Moreover, the second element of the appointment test, *i.e.*, acceptance noted by appointee, is similarly met because, before entering on duty as County Executive Director, the individual *must* execute ASCS Form 586, the Oath of Office. Publication 22–PM ¶ 63(A). Assuming these procedures were followed, it is concluded that the plaintiff was not only "appointed" as the term is defined under 5 U.S.C. § 2105, but also that he "revealed his awareness" of such when executing ASCS Form 586. Thus, contrary to defendant's assertion,

plaintiff has met the first prong of the test for "employee" as defined under § 2105.

### 2. *Performance of a federal function*

As previously outlined, the ASCS County offices are undeniably delegated the authority to administer federal programs. This question is factually and legally undisputed. *See* 16 U.S.C. § 590h(b); *Gibson*, 11 Cl.Ct. at 8; *Duba*, 303 at 571; *Rasmussen*, 222 F.Supp. at 441. Accordingly, it is concluded that the plaintiff has met the second prong of § 2105 in that he was clearly engaged in the performance of a federal function.

### 3. *"Subject to supervision" by an individual who is an employee as defined under § 2105*

Defendant asserts that, because plaintiff served at the pleasure of the County Committee, he fails to meet the final prong under § 2105's definition. However, this bland assertion is easily defeated.

The language contained at § 2105 states that the employee must be "subject to" supervision by an individual meeting this test. As has been established, the County Office which the plaintiff supervised, *is* subject to the "general direction and supervision" of the State Committee. 16 U.S.C. § 590h(b); 7 C.F.R. § 7.21; *accord, Gibson*, 11 Cl.Ct. at 8; *Rasmussen*, 222 F.Supp. at 441. State Committee members meet the definition of employee under § 2105 because they are directly appointed by the Secretary to perform a federal function and are subject to supervision by the ASCS, Washington, D.C. 16 U.S.C. § 590h(b). Accordingly, we hold that plaintiff meets each prong of the definition of

---

**24.** As noted, the State Committee members are directly appointed by the Secretary of Agriculture.

**25.** Because it is undisputed that the handbook was not published in the Federal Register and, therefore, not promulgated according to the strict requirements of the Administrative Procedures Act, 5 U.S.C. § 552(a)(1), it cannot be accorded the dignity of regulations. *See Thomas v. County Office Committee of Cameron County*, 327 F.Supp. 1244, 1253 (D.Tex.1971), *citing to United States v. Morton Salt Co.*, 338

U.S. 632, 644–45, 70 S.Ct. 357, 364–65, 94 L.Ed. 401 (1950). Nevertheless, we accord this manual considerable weight because it constitutes a "body of informed judgment" to which the courts may properly resort for guidance. *Accord, Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Thomas*, 327 F.Supp. at 1253–54.

**26.** The State Executive Director is a Civil Service excepted employee. *See* 5 C.F.R. § 6.8(c) (1984), *reprinted in* 5 U.S.C. § 3301, note, Rule 6.8(c).

employee contained at 5 U.S.C. § 2105.[27] The court is now postured to assess the jurisdictional question presented with respect to plaintiff's Back Pay Act and Severance Pay Act claims.

### D. *Tucker Act Jurisdiction*

The nucleus of the Claims Court's jurisdiction under the Tucker Act is defined by 28 U.S.C. § 1491 to embrace:

> ... any claim against the United States founded either upon the Constitution or any Act of Congress, or any regulation of an executive department or upon any express or implied contract with the United States....

28 U.S.C. § 1491.

■ Section 1491, however, is narrowly construed, and therefore, does not *ipso facto* create a substantive right for money damages. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Under this narrow construction, the courts require that the claim asserted must be for money damages, *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967), and that the plaintiff also assert an independent statute or regulation creating either an implied or express substantive right to receive monetary compensation from the government for damages. *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983); *Eastport,* 178 Ct.Cl. at 605, 372 F.2d at 1008.

Addressing the assertions contained in the instant action, the court notes that the plaintiff: (i) seeks monetary relief for an alleged breach of an implied-in-fact employment contract; (ii) seeks monetary relief in the form of back pay; and (iii) seeks monetary relief in the form of severance pay.

For the reasons expressed below, we hold that: (1) the plaintiff fails to invoke the court's Tucker Act jurisdiction under principles applicable to breach of an implied-in-fact contract claim; (2) we also are without jurisdiction to afford the plaintiff monetary relief under the Back Pay Act, 5 U.S.C. § 5596; and (3) although we possess jurisdiction to grant relief under the Severance Pay Act, 5 U.S.C. § 5595, we are unable to reach the merits of plaintiff's claim, at this instant, in the context of defendant's motion to dismiss for lack of jurisdiction.

### 1. *Implied–In–Fact Contract*

■ Based upon the court's finding that plaintiff was a federal employee *appointed* subject to civil service laws, we are constrained to hold that his claim for damages for breach of an *implied-in-fact contract* is not meritorious. As previously demonstrated, *supra,* federal employment is a matter of legal status pursuant to statutes and regulations, not a matter of contract. *See United States v. Hopkins,* 427 U.S. 123, 129–30, 96 S.Ct. 2508, 2512, 49 L.Ed.2d 361 (1976); *Brame v. United States,* 10 Cl.Ct. 252, 256 (1986). Moreover, and contrary to the plaintiff's assertion, Publication 22–PM did not and does not establish the terms and conditions of a contract because it was promulgated merely to "instruct" State and County offices on the appropriate procedures to be followed in office administration. Also, said publication specifically refers to the County Executive Director's "appointment," thus supporting the court's finding that plaintiff entered into competitive service under federal appointment as defined under § 2105. Given these circumstances, we are constrained to conclude that the plaintiff's assertion, that he was employed by the ASCS under an implied-in-fact contract, is spe-

---

**27.** *Cf. Kelly v. Herak,* 252 F.Supp. 289, 297 (D.Mont.1966) (ASCS office manager suspended by State Committee) (held: Although *government employee* has no constitutional right to a hearing with all the requirements of due process, " 'where *governmental action* seriously injures an individual, and the reasonableness of the action depends on fact finding,' due process requires disclosure of evidence supporting government's case"; *aff'd,* 391 F.2d 216 (9th

Cir.1968)); and *Rasmussen,* 222 F.Supp. at 441, wherein the court stated that "although the question [was] not free from doubt, ... the *State Committee* (under its general supervisory powers) has the power to suspend a county manager when the County Committee ... fails to Act." [We note that defendant erroneously argues that plaintiff concedes that he is not a federal employee.]

cious and contrary to fact and law. Accordingly, we hold that said contention cannot invoke this court's Tucker Act jurisdiction based upon an asserted breach of an alleged implied-in-fact contract.

2. *Limitation on Claims Court Back Pay Act Jurisdiction, United States v. Fausto* [28]

■ Our finding, *supra*, that plaintiff's status satisfies the elements to the definition of an employee under 5 U.S.C. § 2105, renders defendant's contrary contention irrelevant with regard to the plaintiff's ability to seek relief under the Back Pay Act, 5 U.S.C. § 5596.[29] This is so, as we now explain, because we are without subject matter jurisdiction to entertain the complaint to the degree that it avers that the plaintiff is entitled to relief under the Back Pay Act.

In *United States v. Fausto,* 484 U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court recently examined Claims Court Tucker Act jurisdiction in the context of a Back Pay Act claim, and unequivocally found jurisdiction lacking. 484 U.S. at ——, 108 S.Ct. at 676–77, 98 L.Ed. 2d at 844. Although the plaintiff in *Fausto* was characterized as an excepted non-preference civil service employee, that case, nevertheless, controls the relevant jurisdictional issues herein presented.

This is so because the Court there found that the comprehensive review scheme of the Civil Service Reform Act of 1978 (CSRA) implicitly repealed pre-CSRA judicial interpretation of the Back Pay Act. Prior to CSRA enactment, judicial interpretation "allowed review in the Court of Claims of the underlying personnel decision giving rise to the claim for back pay." *Fausto,* 484 U.S. at ——, 108 S.Ct. at 676, 98 L.Ed.2d at 844. According to the Supreme Court, however, repeal of such authority occurred post-CSRA because:

> Before enactment of the CSRA, regulations ... provided that a court authorized to correct ... an unjustified personnel action was an "appropriate authority" within the meaning of the Back Pay Act. 5 C.F.R. 550.803(c) (1968). And the Court of Claims had held ... that it was such a court because it had jurisdiction to award backpay.

484 U.S. at ——, 108 S.Ct. at 676, 98 L.Ed. 2d at 844 (citation omitted). However, weighing the "comprehensive and integrated review scheme of the CSRA" against the "pre-existing patchwork scheme," the Supreme Court concluded that, "the Claims Court (and any other authority relying on Tucker Act jurisdiction) is *not* an 'appropriate authority' [as the phrase had previously been interpreted] to review an agency's

28. 484 U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988).

29. 5 U.S.C. § 5596, Back Pay Due to Unjustified Personnel Action, provides in relevant part:

   (a) For the purpose of this section, "agency" means—
      (1) an Executive agency;
      (2) the Administrative Office of the United States Courts;
      (3) the Library of Congress;
      (4) the Government Printing Office; and
      (5) the government of the District of Columbia.
   (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

      (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
      (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and
      (ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or grievance processed under a procedure negotiated in accordance with chapter 71 of this title, shall be awarded in accordance with standards established under section 7701(g) of this title;

   \* \* \* \* \* \*

   (c) The Office of Personnel Management shall prescribe regulations to carry out this section. However, the regulations are not applicable to the Tennessee Valley Authority and its employees.

personnel determination." *Id.* (emphasis added).

Indeed, *Fausto* quite specifically construes the phrase "appropriate authority" as used in the Back Pay Act to mean the agency, *i.e.,* the Merit Systems Protection Board (MSPB), or the Court of Appeals for the Federal Circuit (CAFC), and *not* the U.S. Claims Court. Therefore, given the foregoing, we hold that this court is without jurisdiction to entertain this action to the degree plaintiff seeks relief under the Back Pay Act.[30]

### 3. *Relief Under The Severance Pay Act* [31]

■ Notwithstanding *Fausto, supra,* we also hold that the Claims Court has jurisdiction to award relief to plaintiff under the provisions of the Severance Pay Act; and we may entertain a claim presented thereunder if the plaintiff satisfies the elements entitling him to relief on the merits.

The Severance Pay Act, unlike the Back Pay Act, contains no language predicating entitlement thereunder to a finding by "an appropriate authority" that an agency decision was erroneous. Congress enacted the Severance Pay Act to "afford monetary relief to Federal employees who, after long years of faithful public service, 'find themselves out in the cold without work and without retirement,' with the complete loss of earned employee rights." *Sullivan v. United States,* 4 Cl.Ct. 70, 74 (1983), *aff'd,* 742 F.2d 628 (Fed.Cir.1984), *citing, Akins*

---

**30.** We are not unsympathetic to plaintiff's unfortunate predicament. Although requested by plaintiff during oral argument, this case cannot be transferred to the district court "in the interest of justice" pursuant to our authority under 28 U.S.C. § 1631 because said court has already concluded that it lacks subject matter jurisdiction over all of plaintiff's claims presented herein. Inasmuch as that court is the final arbiter of its jurisdiction, this court cannot and will not sit as a court of appeals with regard to its decision. *See Little River Lumber Co. v. United States,* 7 Cl.Ct. 492, 494 (1985).

This back pay claim, also, cannot be remanded to the agency (MSPB) for action because it is not within the court's power to *remand* a case *not* within its jurisdiction. *See Mark Smith Const.,* 10 Cl.Ct. at 546 n. 5. The court notes that to the extent that the MSPB, in *Meland v. Department of Agriculture,* No. DE03518020043, MSPB, August 4, 1980, and *Norday v. Department of Agriculture,* ASCS No. SL0752821023, October 19, 1982, declined to take jurisdiction over ASCS County office employees claims, we are unpersuaded that the Board lacks jurisdiction over plaintiff's Back Pay Act claims. The *Meland* decision failed to differentiate between ASCS County Offices and ASCS County Committees. As established, *supra,* they are patently identifiable and distinct units that perform separate functions under the supervision of the ASCS. Moreover, the Board's conclusion that the plaintiff was not "appointed" as required under 5 U.S.C. § 2105 is apparently contradictory to the statutory mandates of 16 U.S.C. § 590d, the legislative history relative thereto, and prior case law.

Similarly, *Norday's* analysis is also questionable. There, the individual failed to submit a brief regarding his employment status. The Board, under the basic premise that the appellant had the burden of proof as to jurisdiction, accordingly found such lacking. *See also Pavao*

*v. Merit Systems Protection Board,* 762 F.2d 988, 989 (Fed.Cir.1985) (MSPB lacks jurisdiction to review removal of ASCS County Executive Director where plaintiff fails to *meet burden* of proving he is an employee). *See also* 5 U.S.C. § 7513. Thus, to the extent that the Claims Court relied on *Meland* and *Norday* in *Hamlet v. United States,* 14 Cl.Ct. 62, 67 (1988), we respectfully decline to follow that lead.

**31.** 5 U.S.C. § 5595, Severance pay, provides in pertinent part:

  (a) For the purpose of this section—
    (1) "agency" means—
     (A) an Executive agency;
     (B) the Library of Congress;
     (C) the Government Printing Office; and
     (D) the government of the District of Columbia; and
    (2) "employee" means—
     (A) an individual employed in or under an agency; and
     (B) *an individual employed by a county committee established under section 590h(b) of title 16;*

     \*    \*    \*    \*    \*    \*

  (b) Under regulations prescribed by the President *or such officer or agency as he may designate,* an employee who—
    (1) has been employed currently for a continuous period of at least 12 months; and
    (2) is involuntarily separated from the service, *not by removal for cause* on charges of misconduct, delinquency, or inefficiency;
is entitled to be paid severance pay in regular pay periods by the agency from which separated.

     \*    \*    \*    \*    \*    \*

  (g) The Secretary of Agriculture shall prescribe regulations to effect the application and operation of this section to an individual named by subsection (a)(2)(B) of this section.

*v. United States,* 194 Ct.Cl. 477, 484, 439 F.2d 175, 178 (1971). Consistent with our Tucker Act jurisdiction to review claims which allege violation of a statute or regulation mandating the payment of money for violation thereof, this court has, in the past, reviewed the facts underlying claims of entitlement under the Severance Pay Act. *See e.g. and compare, Santora v. United States,* 10 Cl.Ct. 38 (1986); *Santora v. United States,* 9 Cl.Ct. 182 (1985); *Sullivan, supra, with, Spring v. United States,* 492 F.2d 1053 (4th Cir.1974) (reversing summary judgment to government of District Court decision where that court entertained Severance Pay Act claims pursuant to authority vested in it under 28 U.S.C. § 1346). However, for the reasons stated, *infra,* we conclude that this case is not properly postured for consideration and a determination on the merits of the plaintiff's claim of entitlement.

■ To establish entitlement to severance pay, a plaintiff *must* show that he was: (i) an employee as defined under the Act; (ii) employed for a continuous period of at least 12 months; (iii) involuntarily separated from service; and (iv) not removed for cause on charges of misconduct, delinquency, or inefficiency. 5 U.S.C. § 5595. "The provisions governing eligibility for severance pay due to involuntary separation are to be construed liberally." *Santora v. United States,* 9 Cl.Ct. at 186, citing, *Sullivan v. United States,* 4 Cl.Ct. at 74–75, *aff'd per curiam,* 742 F.2d 628 (Fed.Cir.1984).

Applying the requisite liberal construction, we find that the plaintiff fulfills the eligibility requirements to the extent that: (1) he was an employee as defined on the face of the statute, 5 U.S.C. § 5595(a)(2)(B); (2) it is undisputed factually that the plaintiff was employed for a continuous period of no less than 12 months; and (3) it is also undisputed factually that the plaintiff was involuntarily separated from service. Nevertheless, the facts are strenuously disputed with regard to the propriety of the agency's characterization of plaintiff's separation as "removal for cause." The correctness of this factual determination is dispositive of the issue of entitlement to severance pay, and is, therefore, improperly postured in the context of a decision on defendant's motion to dismiss. We, therefore, decline to address that issue in the present posture of this case and, accordingly, reserve same for further proceedings.

*Conclusion*

Based upon the foregoing, the court grants defendant's motion to dismiss in part and denies it in part. To the extent that the plaintiff seeks entitlement to damages for an alleged breach of an implied-in-fact contract, such relief is hereby DENIED for failure to state a claim upon which relief can be granted, and defendant's motion to dismiss on that basis is hereby GRANTED. RUSCC 12(b)(4). Furthermore, inasmuch as this court is only permitted to act within the bounds of statutory authority as defined by Congress, and thus, cannot remand or transfer plaintiff's Back Pay Act claim(s) to the MSPB, defendant's motion to dismiss such claim(s) for lack of subject matter jurisdiction is hereby GRANTED. RUSCC 12(b)(1). Finally, to the extent plaintiff seeks relief under the provisions of the Severance Pay Act, we hold that this court possesses subject matter jurisdiction, and, in addition, there exists an unresolved dispositive factual issue with regard to the propriety of defendant's characterization of plaintiff's separation as a "removal for cause." Therefore, defendant's motion to dismiss plaintiff's claim to the extent such claim may entitle him to severance pay is hereby DENIED.

Inasmuch as the claim for severance pay remains open, a telephonic status conference is hereby scheduled for Friday, July 29, 1988, at 4:00 p.m. On this date, the parties are directed to be prepared to advise the court as to how they wish to proceed relative to the pending claim for severance pay. Furthermore, the parties are hereby directed to prepare memoranda of law addressing the scope of this court's review in this connection. Such memoranda shall be filed with the court, and served via in-hand delivery on opposing counsel,

on or before 11:00 a.m., Friday, July 29, 1988.

IT IS SO ORDERED.

## SUPPLEMENTAL MEMORANDUM ORDER

### Background

On July 25, 1988, the court filed an interim opinion in subject case wherein the parties were directed to prepare memoranda of law addressing the scope of this court's review on the remaining issue of—whether the Department of Agriculture, Agricultural Stabilization and Conservation Service's (ASCS) Clay County Committee had properly characterized plaintiff's termination as "removal for cause." Such memoranda were filed with the court on July 29, 1988. Following thereon, during a telephonic status conference conducted August 1, 1988, the court further directed plaintiff to file a supplemental memorandum of law, therein citing to *pointed* authorities supportive of his position that this court's review should be *de novo* with respect to the foregoing issue. Said memorandum was filed by plaintiff on August 5, 1988. Defendant's response thereto was filed on August 11, 1988.

### Contentions of the Parties

Without citing case law supportive of his position, plaintiff asserts that he is entitled to a trial *de novo* or, alternatively, a *de novo* review of the record because no "independent review" (*i.e.,* independent of the Department of Agriculture) has been conducted into the circumstances surrounding plaintiff's termination. In opposition, defendant contends that plaintiff is merely entitled to a *record review* of the propriety of his removal to ensure that the officials who effectuated said removal did not act in an arbitrary and capricious manner, and that such action was not so grossly erroneous as to have been in bad faith. In this connection, defendant also asserts that plaintiff could have appealed his removal to the Merit Systems Protection Board (MSPB) for independent review, but that he chose not to do so.

Upon consideration of the parties' submissions and relevant case law, we conclude that the scope of the court's review in the instant matter is limited to the whole administrative record. Furthermore, in connection therewith, the court perceives its standard of review to be—whether the agency acted in an arbitrary and/or capricious manner in characterizing plaintiff's removal as a "removal for cause"; and, further, whether or not such action was an abuse of discretion and not in accordance with the law, *infra.*

### Analysis of the Parties' Contentions

First, the court notes that, contrary to the defendant's assertion, the plaintiff apparently could not have obtained from the MSPB "independent" review of his agency termination. This is so because the regulation which governs the removal of an ASCS employee, *i.e.,* 7 C.F.R. § 7.34 (1984), states that "the determination of the Deputy Administrator *is final and not subject to further administrative review."* (emphasis added). Thus, *by applicable regulation,* plaintiff was precluded from seeking independent administrative review of his removal. Further, and contrary to defendant's position, we note that this court is *not,* contemporaneous with its consideration of plaintiff's Severance Pay Act claims, required to determine whether or not plaintiff's *removal, per se,* was appropriate. In other words, this court will decide one narrowly-drawn issue: whether on the whole record the additional *stigma* attached to plaintiff's removal, *i.e.,* the characterization of said removal as a "removal for cause," was appropriate. *See* p. 318 *supra; see also McNeill v. Butz,* 480 F.2d 314, 320 (4th Cir.1973). Inasmuch as determination of this focused issue requires us to review the agency action that gave rise to such characterization, we hold that the court's scope of review is limited to a review of the record previously before the agency. Our basis for so holding is discussed below, followed by a statement of the operative standard of review and a supplemental order of the court.

*Scope of Review*

In defining our scope of review of subject agency's action, we necessarily must look to the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706 (1982); *accord Pope v. United States,* 15 Cl.Ct. 218, 222 n. 1 (1988). The APA provides an outline of the procedures for judicial review of administrative actions. *See Wathen v. United States,* 208 Ct.Cl. 342, 353 n. 6, 527 F.2d 1191, 1198 n. 6 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). Applying said procedures enunciated therein, and applicable case law interpreting those procedures, we find that plaintiff's assertion that he is entitled to *de novo* review of the operative issue, *supra,* is in error.

Generally, *de novo* review of agency action under APA standards is the exception rather than the rule, unless an operative statute so requires. *Norwich Eaton Pharmaceuticals, Inc. v. Bowen,* 808 F.2d 486, 489 (6th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987). Plaintiff has proffered no statutory authority whatsoever for his assertion, and after an independent search, we are constrained to conclude that statutory authority for *de novo* review, *in this case,* does not exist. Hence, we must examine the exceptions to the general rule that prohibits *de novo* review of agency action.

■ The exceptions to the general rule that would *permit de novo* review of agency action may be invoked when: (1) the action taken by the agency is adjudicatory in nature, *and* the agency factfinding procedures attendant thereto are inadequate; *or* (2) when issues that were not before the agency are raised in a proceeding to enforce non-adjudicatory agency action. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 36 (1971). Note, and we hold, that the two-part criteria of the first test is in the conjunctive. Neither exception applies in the instant action, as we explain, *infra.*

We find that the procedures employed by the Department of Agriculture attendant to plaintiff's removal were adjudicatory in nature. An adjudicatory action is "one which determines 'the respective rights and claims of the parties.'" *Equal Employment Opportunity Commission v. Raymond Metal Products Company,* 385 F.Supp. 907, 920 (D.Md.1974). At the administrative level, plaintiff was provided a hearing wherein he was permitted to introduce testimony and documentary evidence to buttress his position that he was wrongfully terminated. The result of that hearing was a determination of plaintiff's rights and claims. Specifically, the Department of Agriculture found that plaintiff's removal for cause by the County Committee was warranted, in spite of the fact that the State Committee had initially instituted a proceeding that could have resulted in plaintiff's removal without prejudice. Ergo, the procedures employed by the Department of Agriculture were adjudicatory.

However, notwithstanding the fact that the action taken by the Department of Agriculture was adjudicatory in nature, we are constrained to conclude that the first exception, nevertheless, does not apply. The second prong to this exception, that plaintiff also must satisfy, requires that the "factfinding procedures" underlying the adjudicative action must have been "inadequate." *Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823. Here, the factfinding procedures utilized by the agency cannot be said, on this record, to have been "inadequate." Plaintiff was afforded fundamental due process inasmuch as the opportunity to call witnesses, cross examine ASCS witnesses, and introduce documents into evidence was fully extended.[1] Thus, plaintiff's situation does not satisfy the first exception under the APA that would have allowed this court to conduct a *de novo* review of his claim.

Likewise, as to the second exception, we must conclude that plaintiff fails to satisfy that test. That exception is only applicable

1. However, Roy Grover, one of the County Committee members who instituted the "for cause" removal proceedings against Hedman, did *not* testify at the administrative hearing conducted on January 18 and 19, 1985. *See infra.*

when the prior proceedings were to "enforce nonadjudicatory action." *Norwich Eaton Pharm.*, 808 F.2d at 489. As stated, the administrative proceedings underlying *this* action were adjudicatory in nature. Therefore, we must necessarily conclude that the plaintiff is not entitled to *de novo* review of the agency action that resulted in his removal being characterized as "removal for cause." Against the foregoing, we will next address the standard of review under which we will conduct our record review of the agency action herein challenged.

*Standard of Review*

Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review" pursuant thereto. 5 U.S.C. § 704 (1982). *See Bowen v. Massachusetts*, —— U.S. ——, ——, 108 S.Ct. 2722, 2736, 101 L.Ed.2d 749 (1988). "The legislative material elucidating [the] ... act manifests a congressional intention that it cover a broad spectrum of administrative actions...." *Id.* The Supreme Court echoes that "theme by noting that the Administrative Procedures Act's 'generous review provisions must be given a "hospitable" interpretation.'" *Id., citing, Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

We previously noted that there is clear congressional intent that federal employees be permitted to seek judicial review of Severance Pay Act claims, 5 U.S.C. § 5595. Specifically, we note that this statute was enacted to afford monetary relief to federal employees who, after long years of faithful public service, find themselves out in the cold, without work, without retirement, and with the complete loss of earned employee rights. See p. 317–18, *supra, citing Sullivan v. United States*, 4 Cl.Ct. 70, 74 (1983), *aff'd* 742 F.2d 628 (Fed.Cir.1984). Moreover, considering the congressional intent behind the Severance Pay Act, the court is constrained to conclude that denial of the benefits thereunder is not a matter "committed to agency discretion by law" that would, of course, otherwise preclude judicial review. 5 U.S.C. § 701(a)(2); *see, Over-*

*ton Park*, 401 U.S. at 410, 91 S.Ct. at 820; *accord Pope, supra*, 15 Cl.Ct. at 222. Having determined that judicial review is appropriate, and that the court is required to review the whole administrative record, we next delineate the appropriate standard that the agency action must satisfy in order to meet APA requirements.

Generally, judicial review of administrative actions in the civilian pay areas is limited. *Pearson v. United States*, 1 Cl.Ct. 78, 88, 555 F.Supp. 388 (1983). However, in all cases where judicial review is appropriate, agency action must be set aside if the action is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' or if the action fail[s] to meet statutory, procedural, or constitutional requirements." 5 U.S.C. §§ 706(2)(A), (B), (C), (D) (1982); *Overton Park*, 401 U.S. at 413–14, 91 S.Ct. at 822; *see also Pope, supra*, 15 Cl.Ct. at 222. Thus, in reviewing the operative issue currently before the court, we will apply the aforementioned APA standards and consider whether the agency acted either in an arbitrary and capricious manner, or whether the agency abused its discretion in characterizing Mr. Hedman's removal as "for cause," and, further, whether such action meets statutory, procedural, and constitutional requirements. *Overton Park*, 401 U.S. at 414, 91 S.Ct. at 822–23; *see also Pope, supra*, 15 Cl.Ct. at 222. In accomplishing the foregoing, the court will, of course, endeavor to take care to assure that it does not "substitute its judgment for that of the agency." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824.

*Summary and Order*

Notwithstanding our limited scope of review, we will consider the foregoing issue raised by plaintiff's Severance Pay Act claims based upon the *full administrative record* that was before the Deputy Administrator at the time he made his decision, without regard to whether said record was *fully examined* by him in reaching that decision. In short, we will determine—whether the County Committee's decision

characterizing plaintiff's removal as "removal for cause" violates APA standards. Given the foregoing, the court HEREBY ORDERS that:

1. The parties shall file with the court on or before September 6, 1988, the *full and complete* administrative record. Attached thereto shall be—(i) a detailed index identifying each document and the page number; and (ii) a joint stipulation to the effect that said administrative record is *complete and accurate*.

2. On or before September 22, 1988, plaintiff shall file his motion for summary judgment. Said motion shall cite specifically to those portions of the administrative record which support his contention that the County Committee's characterization of plaintiff's removal, as a "removal for cause," was inappropriate. Said memorandum shall fully comply with RUSCC 7, 56, and 83.

3. On or before October 24, 1988, defendant shall file its opposition to plaintiff's motion for summary judgment. Concomitantly, it shall also file its cross-motion for summary judgment, similarly delineating those portions of the administrative record which support its contention that the County Committee's characterization of plaintiff's removal, as a "removal for cause," was appropriate. Said memorandum shall fully comply with RUSCC 7, 56, and 83.

4. On or before November 10, 1988, plaintiff shall file his reply to defendant's opposition to plaintiff's motion for summary judgement; and contemporaneously, plaintiff shall also file his opposition to defendant's cross-motion for summary judgment. Said filings shall fully comply with RUSCC 7, 56, and 83.

5. On or before November 28, 1988, defendant shall file its reply to plaintiff's opposition to defendant's cross-motion for summary judgment. Said filing shall fully comply with RUSCC 7, 56, and 83.

6. Service of the aforementioned pleadings shall be made by the party so filing, by overnight mail. Filings shall be made with the court, in hand by messenger on the dates indicated.

Finally, the court will take under advisement plaintiff's request that we consider the deposition of County Committee member, Roy Grover, in conjunction with our review of the propriety of the Committee's characterization of Mr. Hedman's removal as a "removal for cause." (*See* note 1, *supra*.) We note that such deposition was taken during the district court proceeding initiated subsequent to Mr. Hedman's administrative hearing. Plaintiff's Supplemental Memorandum of Law, p. 6. Consequently, such testimony is not part of the "record" that was before the administrative agency. As justification for admitting subject deposition, plaintiff, without citing supporting authority for his proposition, blandly avers that the deposition would be offered "to show the procedure which the County Committee used to terminate Hedman's employment." Considering our limited inquiry in this case, *supra*, we will allow plaintiff to file such document with the court, *apart from the administrative record*, solely for the purpose that the court may ascertain whether, in fact, the administrative record establishes the requisite bad faith or improper behavior that would warrant our consideration of such testimony, *see Overton Park, supra*, 401 U.S. at 420, 91 S.Ct. at 825–26 and whether the administrative record is adequate with respect to our limited inquiry. *See also Norwich Eaton Pharm., supra*, 808 F.2d at 489. The court's opinion premised on its review of the administrative record will, of course, state whether said deposition was considered in its review, and, if so, the factual and legal justifications therefor.

IT IS SO ORDERED