Don OLENHOUSE, Alan Sharp and John Rubow, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

COMMODITY CREDIT CORPORATION; Richard Lying, Secretary of the United States Department of Agriculture; Milton Hertz, National Administrator of Agricultural Stabilization and Conservation Service; Frank Mosier, State Director of Agricultural Stabilization and Conservation Service for the State of Kansas; Julius Johns, Chairman and Member of the State Committee for the Agricultural Stabilization and Conservation Service for the State of Kansas; and David Stokebrand and Jim Carpenter, Members of the State Committee for Agricultural Stabilization and Conservation Service for the State of Kansas, Defendants.

No. 89–1029–PFK.

United States District Court, Dist. Kansas.

Nov. 12, 1992.

Karen K. McIlvain, Madison, KS, for plaintiffs.

Lee Thompson, U.S. Atty., and Stephen K. Lester, Asst. U.S. Atty., Wichita, KS, for defendants.

**MEMORANDUM AND ORDER**

PATRICK F. KELLY, Chief Judge.

The present case comes to this court for review of a final administrative agency decision by the Agricultural Stabilization Conservation Services (ASCS). Plaintiffs received reduced deficiency payments for their wheat crop pursuant to a decision by the ASCS. Defendants moved to affirm this administrative agency's decision, and plaintiffs moved for summary judgment claiming that the decision was unsupported by fact and unwarranted by law.

Plaintiffs, Don Olenhouse and Alan Sharp, planted wheat in September of 1986. At the end of September and throughout October of that same year, Wilson County received over 25 inches of rain and President Reagan declared it a disaster county. Plaintiffs' wheat was destroyed by the floods.

On November 22, 1986, Mr. Olenhouse replanted parts of the fields that had been flooded. Mr. Sharp did the same with his fields in December of 1986. Mr. Olenhouse planted more of his fields on January 8, 1987 and finished in February, 1987. Mr. Sharp finished his fields in March of 1987. Another plaintiff, Mr. Rubow, finished planting in March as well due to the earlier flooding.

There is a factual dispute concerning the plaintiffs' knowledge of yield reductions. Plaintiffs claim that the ASCS County Committee did not tell them that the time of planting would result in reductions in yields. They also claim that they had no notice that the ASCS County Committee had set an end planting date in Wilson County.[1] Defendants argue that a notice concerning the possibility of such yield reductions in cases where different practices are used was mailed on November 12, 1986 and again on December 1, 1986. Defendants further point out that the end planting date of November 30, 1986 for Wilson County was clearly set forth in ASCS Handbook 5–PA, Rev. 7.

---

1. The end planting date is used by the ASCS and the Federal Crop Insurance Corporation to set a deadline by which time a crop must be planted in order for it to be insured or for the producer to be eligible for deficiency payments.

On December 8, 1986, the county committee reviewed 5–PA, Rev. 7, ¶ 414, and found that yield reductions would not be appropriate because any changed practices were due to reasons beyond the producers' control. Plaintiffs argue that Notice PA–1112, which more explicitly allows for reductions in deficiency payments, was not received in the Wilson County ASCS Office until January 9, 1987. Plaintiffs point out that it was not until April 4, 1987 that the state director, Mr. Mosier, indicated that yields would be reduced for excessively late planting.

On October 5, 1987, the district director recommended yield reductions of 25% for wheat planted in January, 50% if planted in February, and 100% for wheat planted in March. Plaintiffs argue that they received no notice or information concerning the method by which these reductions were calculated. They also claim that the calculations were arbitrary and lacked scientific foundation.

Defendants moved for summary judgment asking this court to affirm the decision of the administrative agency in its reduction of the deficiency payments made to plaintiffs. Plaintiffs moved for summary judgment claiming that the agency decision is not supported by substantial evidence and that plaintiffs are entitled to judgment.

When reviewing an administrative agency's final decision, 5 U.S.C. § 706(2)(A) directs the reviewing court to use the arbitrary and capricious standard of review. The court must uphold the agency's findings and conclusions unless they are found to be arbitrary and capricious, and the court may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); 5 U.S.C. § 706(2)(A). The question before this court is whether or not the administrative agency's findings were arbitrary and capricious in light of the facts before them.

The U.S. Secretary of Agriculture must make deficiency payments available to producers participating in the wheat program.

7 U.S.C. § 1445b–3(c)(1)(A). The amount of any deficiency payment shall be reduced to reflect reductions in yield which are the result of causes other than a natural disaster, such as a change in farming practice. 7 C.F.R. 713.6(c).

■ Plaintiffs argue that the information they received and relied on indicated that they would receive full deficiency payments. Plaintiffs cite their applications for disaster credit and the letter from the local office which said that disaster credit was available to suggest that they would get full deficiency payments. Plaintiffs claim they were never told the contrary until December of 1987, virtually a full year after they planted the wheat. Defendants argue that reasonable farmers would not have relied on such information.

Defendants submit that on November 12, 1986 and December 1, 1986, a notice of yields and acreage bases was mailed informing farmers that yields may be reduced if practices differ from those normally followed. Also, defendants point out that the plaintiffs knew or should have known, from the ASCS Handbook, that November 30, 1986 was the end planting date. To plant beyond this time was not normal practice and therefore could be covered by the notice mailed to them.

Thus, although plaintiffs present many sound arguments for lack of notice, the plaintiffs did have some notice and this court cannot find that the agency's finding of adequate notice was arbitrary and capricious.

■ Plaintiffs argue that after being informed of the agency's decision, the reconsideration sought through the Deputy Administrator, State and County Operations (DASCO), was fraught with due process problems. Hearings were by phone, one allegedly by a secretary, not a hearing officer. The state committee's records were incomplete and inaccurate. DASCO found that plaintiffs were informed about the payment yields and that the correct procedures were used to determine reductions in yields.

7 U.S.C. § 1469 requires the Secretary of Agriculture to establish an appeal procedure which provides for administrative review of any determinations made with respect to farm acreage basis, crop acreage basis, and farm program payment yields. The regulations provide for an informal hearing at both the state committee and deputy administrator levels. 7 C.F.R. 780.4 & 780.5 (1987). The reviewing authority shall prepare a written record containing a clear statement of the facts found by the reviewing authority. 7 C.F.R. 780.8(d).

Plaintiffs argue that the record did not contain the specific reasons for the committees' findings or decisions. The plaintiffs did, however, present the argument to both the county and state committees. The administrative agency found that the appeals procedure had been followed and that both the county and state committees used the proper procedures. The regulation in question merely requires that the committee or agency prepare a written record with a clear statement of the facts presented to it and a clear statement of the material facts found by the reviewing authority. 7 C.F.R. § 780.8(d). The administrative agency found no procedural violations by either the county or state committees, and set forth the facts presented and the basis for its conclusions.

Thus, any argument that the administrative agency violated plaintiffs' due process rights is unfounded in light of the record and the regulations.

Plaintiffs cite 7 C.F.R. § 790.2, which states that performance "in reliance upon action or advice of any authorized representative of a county committee ... *may* be accepted by the [ASCS] as meeting the requirements of the applicable program." (Emphasis added.) Because the county commissioner failed to tell them about an end planting date, plaintiffs argue that the government should be effectively estopped from demanding compliance with governmental regulations. The problem with plaintiffs' argument is that the section cited says "may" not "shall." In this case, the government argues that because the farmers should have known that planting wheat in January and February was beyond the acceptable period, any representations made by the county commissioner to the contrary were not reasonable to follow. It is, therefore, within the government's authority not to find the performances acceptable.

The Secretary of Agriculture has the duty to "ensure that information concerning changes in Federal laws ... are communicated in a timely manner to local committees in areas that contain agricultural producers who might be affected by such changes." 16 U.S.C. § 590h(b). The Secretary of Agriculture established the ASCS from the power which 16 U.S.C. § 590h(b) gave it. Contrary to defendants' contentions, the statutory section does apply to the ASCS. *Hedman v. U.S.*, 15 Cl.Ct. 304, 307 n. 5 (1988). Plaintiffs allege that the county committee told them that no such reductions would apply in these cases and that no information to the contrary was given to the county committee in a timely fashion. District Director Johnston, however, informed the Kansas ASCS Committee of possible yield reductions in cases where different procedures were followed by the farmers, and that ¶ 414 would be the controlling provision. Mr. Johnston sent this memo on December 17, 1986. Paragraph 414 says that disasters must be taken into account, but does not say that a disaster needs to change the agency's findings. In this case, the agency found changed practices that called for yield reductions. The agency knew that a disaster had occurred but obviously felt that fact should not alter its findings. The agency, under 414, must only consider the disaster; any conclusions it reaches about the disaster's impact are up to the agency's discretion.

Plaintiffs allege that the representations made by the county committee estop the government from relying on other representations. In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 418–19, 110 S.Ct. 2465, 2468, 110 L.Ed.2d 387 (1990), the Court refused to say that the government could never be estopped, but held that if the estoppel would cause the

government to pay funds not authorized by statute, the appropriations clause would be violated. Thus, if the result runs counter to congressional intent, no estoppel is possible. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

*Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), concerns Health Services' contract with the Secretary of Health, Education, and Welfare to provide health care services to certain people under Medicare. The Court addressed the question of when an individual's reliance upon an agent of the government estops the government from acting contrary to the agent's representations. The Court held that the traditional test of harm must be met—change in position for the worse—as well as the test of the reliance being reasonable. *Id.* at 61, 104 S.Ct. at 2224.

The representations that plaintiffs allege the county committee made were on December 8, 1986, after the end planting date. Given the lateness of the county committee review, plaintiffs' only two choices were to plant beyond the end planting date or not to plant at all. If plaintiffs had known of the reductions and failed to plant at all, they would have received one-third of the target price for such a crop under the program. 7 C.F.R. § 713.131(a). The deficiency payment is the difference between the target price, set by Congress, and the market price. By planting and having the government reduce their deficiency payments, plaintiffs received fractional shares of the full deficiency payments. Thus, the harm suffered is more than that compared to getting full payments, but it is unclear whether the payment is that much less than the one-third target price plaintiffs would have received. Assuming that there is harm, plaintiffs must still show that the reliance was reasonable.

Defendants contend that reliance on the county committee's representation was not reasonable given the lateness of the planting. Also, the agency found that there was no misinformation given to plaintiffs regarding the reduced payments. Plain-

tiffs counter this agency finding by arguing the county committee found yield reductions would be inappropriate. But the evidence before the administrative agency was merely that the county committee did not indicate yield reductions (Admin.Record 623); there was no evidence that yield reductions could not occur. Thus, because no assertions were given to plaintiffs saying that reductions were impossible, the agency found no misinformation. The agency also did not find reasonable reliance. Those who deal with the government are expected to know the law and may not rely on conduct by a governmental agent to the contrary. *Heckler,* 467 U.S. at 63, 104 S.Ct. at 2225. Plaintiffs should have familiarized themselves with the requirements of the program under which they sought funds. Thus, the finding by the administrative agency of no reliance by the plaintiffs is not arbitrary and capricious.

Plaintiffs raise the methods of computing yield reductions as a finding not supported by law. Although plaintiffs' yields were good for the year 1987, defendants submitted evidence that showed wheat planted in November will produce between 74.8% and 83.3% of that planted in October. (Admin.Record 62.) Thus, there was evidence for the agency to find that wheat planted beyond the end planting date would result in yield reductions.

Plaintiffs argue that ¶ 414, which sets forth when reductions are allowed, was not followed, and therefore ASCS violated its own policies. Paragraph 414 states that before yield reductions are proper, the agency must find changed practices and those changes must be due to reasons within the producers' control. In this case, there were changed practices in that farmers do not normally plant wheat in January and February. These changed practices were the farmers' decisions to make. They could have stopped planting at the end planting date, but they continued even though they were aware of the poor yields that normally result from such late planting. Although the earlier flooding was not within the control of the pro-

ducers, the decision to plant late, or at all, was within their control.

█ Plaintiffs also argue that the ASCS failed to take into account the natural disaster of flooding when calculating the yield reductions, and it therefore made a capricious decision. As for reducing the yields, plaintiffs argue that you cannot reduce for conditions that are a direct result of a disaster. Plaintiffs arguably misread ¶ 414 of the ASCS Handbook. Paragraph 414 only states that the agency is required to determine whether any of the lower production is a result of the disaster. The agency can determine that the lower yields are not a result of the disaster and thereby reduce the yield. An agency's interpretation of its own regulations is given controlling weight unless plainly inconsistent with the regulation. *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *City of Aurora v. Hunt*, 749 F.2d 1457, 1461–62 (10th Cir.1984).

Thus, the agency's findings are plausible, given the wording of the regulation, and should not be considered arbitrary and capricious.

Although plaintiffs raise some persuasive arguments, and may in fact have a stronger basis for their contentions than do defendants, this court can only look to the administrative agency's decision and determine if it was arbitrary and capricious. There is factual and legal support for the administrative agency's findings, and therefore its findings cannot be considered arbitrary and capricious.

IT IS ACCORDINGLY ORDERED this 12 day of November, 1992, that the plaintiffs' motion for summary judgment (Dkt. No. 30) is hereby denied, and that defendants' motion to affirm the administrative decision (Dkt. No. 28) is hereby granted.